CARNEGIE STEEL COMPANY *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 171. Argued January 21, 1916.—Decided February 21, 1916.

Ability to perform a contract is of its very essence, and delay resulting from absence of such ability is not due to unavoidable causes such as fires, storms, labor strikes, actions of the United States, etc., as enumerated in the contract involved in this action.

The fact that a contractor engaging to deliver armor plate of specified qualifications as to thickness, hardness, etc., was delayed by un-

---

foreseen difficulties in the then new art of manufacturing does not excuse performance if such delays were not within the excepted reasons for delay.

49 Ct. Cl. 391, affirmed.

THE facts, which involve the construction of a contract for armor plate with the United States and the right of the contractor to recover sums withheld for delay in completion of the contract, are stated in the opinion.

*Mr. James H. Hayden* for appellant:

The company was not chargeable with the delay that occurred in the delivery of the armor or liable for the sum that the United States deducted as liquidated damages.

The first proviso in article 8 of the contract cannot be so interpreted as to allow the Department to refuse to pay the sum in dispute.

The contract was drawn by the Bureau of Ordnance, and any language of doubtful meaning contained in it should be given an interpretation favorable to the company, rather than one favorable to the Ordnance Department. *Noonan* v. *Bradley*, 9 Wall. 394, citing *Mayer* v. *Isaac*, 6 Mees. & W. 612; *Garrison* v. *United States*, 7 Wall. 668; *Orient Ins. Co.* v. *Wright*, 1 Wall. 456.

The proviso relates to the forfeiture by the company of part of the sum that the Department agreed to pay for the armor actually furnished. Clauses of contracts and of statutes relating to forfeiture invariably receive the one of two or more possible interpretations which is most favorable to the party against whom the forefeiture is asserted. *Phila., Wilm. & Balt. R. R.* v. *Howard*, 13 How. 307, 340; *N. Y. Indians* v. *United States*, 170 U. S. 1, 25.

Even in cases growing out of contracts of the United States, a penal clause, or one providing for the deduction of liquidated damages, is not to be given a liberal construction in favor of the Government.

Where the meaning of an instrument or statute is obscure and the language employed is a proper subject for interpretation, courts will give effect to every provision and word and will not treat any part of it as meaningless or nugatory, unless its provisions are in such hopeless conflict they cannot be reconciled. *Philadelphia* v. *River Front R. R.*, 133 Pa. St. 134.

The proviso does not purport to be complete in itself and on its face bears evidence of its incompleteness. The doctrine "expressio unius est exclusio alterius" is not to be followed in determining the true intent and meaning of a proviso of this nature. *United States* v. *Barnes*, 222 U. S. 513.

If the law required a strict and literal construction of the proviso in question, instead of the reverse, it would not justify the interpretation that the court placed upon it, for as we have seen, that is neither strict or literal, but really a distortion of the proviso.

The court's interpretation cannot be defended on the ground that it was reasonable, for it was not. *Minis* v. *United States*, 15 Pet. 423; *White* v. *United States*, 191 U. S. 545; *Weiss* v. *Swift*, 36 Pa. Sup. 376.

The Ordnance Department and the accounting officers, and the court also, proceeded with the idea that the proviso was a fit subject for the application of the maxim "expressio unius est exclusio alterius." But in the present instance the facts were not such as to warrant an attempt to apply it.

The delay in this case should be classed as an unavoidable cause, within the meaning of the provision in the contract. Broom's Leg. Max., 8th ed., 506; Id., 515; Id., 7th ed., 589.

This is not a case for the application of the doctrine of *ejusdem generis. United States* v. *Mescall*, 215 U. S. 26; *Chic., Mil. &c. Ry.* v. *Hoyt*, 149 U. S. 1, 14; Endlich, Inter. Stat., § 112; *McReynolds* v. *People*, 230 Illinois, 623;

26 Am. & Eng. Enc. Law, 2d ed., p. 610; *Brown* v. *Corbin,* 40 Minnesota, 508.

Delay in the performance of a contract may result from a cause, which, though unavoidable, and unavoidable in the sense in which that term is used in the contract, would not render performance impossible.

The credit allowed by the Chief of Ordnance for delay caused by act of the United States did not bar the company from asserting in court its right to further credit for the cause assigned or for any other cause of delay on account of which the Chief of Ordnance refused to allow any credit, supposing that he was not authorized to do so. *Milne* v. *United States,* 45 Ct. Cls. 314, 321, does not apply, and see *Gegiow* v. *Uhl,* 239 U. S. 3.

*Mr. Assistant Attorney General Huston Thompson* for the United States:

The causes of delay indicated in the contract did not include ignorance or lack of scientific knowledge on the part of appellant. The kind of delay excusable was one which must have arisen from some cause having no essential relation to the contract but as evidenced by the descriptive words therein.

An obstacle, merely because it was unforeseen, does not bring a delay resulting therefrom within the category of delays, such as are caused by the act of God, strikes, etc.

If unexpected impediments lie in the way, and a loss must ensue, the loss must fall where the contract places it. If the parties have made no provision for a dispensation, the rule of law gives none. It does not allow a contract fairly made to be annulled, and it does not permit to be interpolated what the parties themselves have not stipulated. *Hanthorn* v. *Quinn,* 69 Pac. Rep. 817; *The Harriman,* 9 Wall. 161; *Railroad* v. *Smith,* 21 Wall. 255; *Smoot* v. *United States,* 15 Wall. 36, 46; *Jacksonville &c. Ry.* v. *Hooper,* 160 U. S. 514, 527; *Simpson* v. *United*

States, 172 U. S. 372; *United States* v. *Gleason*, 175 U. S. 588, 602; *Satterlee* v. *United States*, 30 Ct. Cls. 31, 33, 50; *Rowe* v. *Peabody*, 93 N. E. Rep. 604; *Marsh* v. *Johnston*, 109 N. Y. Supp. 1104; *Lorillard* v. *Clyde*, 142 N. Y. 456; *Buffalo Co*, v. *Bellevue Co.*, 165 N. Y. 247; *Chicago R. R.* v. *Sawyer*, 69 Illinois, 285; Beach on Modern Law of Contracts, § 217; Chitty on Contracts, 272; *Day* v. *United States*, 48 Ct. Cls. 128.

Since the delay did not come within the descriptive terms of the contract relative to the causes for which delays would be excusable the lower court was right.

MR. JUSTICE McKENNA delivered the opinion of the court.

Petition in the Court of Claims for the recovery of $8,595.35, alleged to be due claimant as a balance of the price of armor plate furnished the Government under a contract between it and claimant.

The contract is an elaborate one and by it claimant engaged to manufacture for the Ordnance Department armor plates of a certain designated thickness in conformity with instructions, specifications and drawings attached to and made a part of the contract. And claimant agreed to provide certain of the 18-inch plates for the purpose of the ballistic test prescribed by the specifications, and that such plates when subjected to the ballistic test should fulfill certain requirements set forth in the specifications. The dates of delivery were to be on or before September 7, 1911, and November 7, 1911, and the place of delivery the Bethlehem Steel Company, South Bethlehem, Pennsylvania.

The Government engaged to receive the plates when manufactured, tested and approved as provided, and make payment for them in installments from time to time as the manufacture of the armor and material pro-

gressed and after delivery. In the event of the claimant failing to prosecute the manufacture of the armor and material properly or to complete delivery on or before the dates named in the contract, the Chief of Ordnance might complete such manufacture at the expense of claimant, charging it with the cost thereof in excess of the contract price; "or else (2) waive the time limit named in the contract and permit the claimant to complete the delivery of the armor and material within a reasonable time, and thereupon deduct from the sum stipulated to be paid the claimant for all of the armor and material, as liquidated damages, a sum equal to one-thirtieth of one per centum of the contract price of all armor and material remaining undelivered on November 7, 1911, for each day of delay in its delivery; Provided, however, that in computing the amount of any such deduction, the claimant should be given credit for delays occurring during the performance of the contract, which the Chief of Ordnance might determine to have been due 'to unavoidable causes, such as fires, storms, labor strikes, actions of the United States and so forth,' and that the date of completion of the delivery, for the purposes of the final settlement between the parties, should be a date to be ascertained by deducting, from the whole period between the signing of the contract and the date of the actual delivery, all delays which were found to have been due to unavoidable causes."

It is alleged that claimant encountered difficulties which were unforeseen by both parties when the contract was made, and were then unforeseeable, and in consequence thereof the delivery of the armor and pertaining material was delayed unavoidably.

That prior to the manufacture of the armor no face-hardened armor 18 inches in thickness had been manufactured in this or any foreign country and no information with respect to the process or processes to be employed in its manufacture was obtainable.

That for the purpose of learning what manner of treatment or face-hardening process should be applied to the 18-inch plates, and in order that they might attain the highest degree of efficiency possible and meet all the requirements of the specifications, claimant completed one of the plates, applying to it a treatment or face-hardening process deduced from the formula which claimant and every other manufacturer of armor plate in this and every foreign country had followed in the manufacture of armor plate and which was recognized by authorities on the subject as the one which would give the best results.

That upon its completion the plate was, on April 19, 1911, subjected to the ballistic test and it met the requirements of the specifications. Thereupon claimant proceeded to complete all of the plates, certain of which were selected for the purpose of the ballistic test and failed to fulfill the requirements of the specifications. Other plates were selected and failed. Thereupon claimant, with all due diligence and dispatch, made or caused to be made by metallurgical experts exhaustive tests and experiments, and it was ascertained that in order to pass the test required by the Ordnance Department the plates must possess certain metallurgical qualities or conditions which, up to that time, were unknown to any one and the necessity for which was not foreseeable when the contract was made. In conducting the test it was necessary to use plates of full size and the tests were conducted with all due diligence and dispatch. From the plates thus tested the Ordnance Department selected a third plate which was tested January 19 and 24, 1912, and was found to fulfill the requirements of the specifications. Claimant in due course finished all of the plates which the contract called for and they were approved and delivered as in the manner prescribed.

It is alleged that by reason of the circumstances de-

tailed there were delays in the delivery of the plates and that the delays were due to causes which were unavoidable within the meaning of the contract.

On account of the delays, however, the Ordnance Department proposed to deduct from the contract price of the armor and pertaining material the sum of $8,598.15 as liquidated damages on account of a portion of the delay. Claimant made protest, asserting that the delays were due to causes provided for in articles 4 and 8 of the contract.

By article 4 it was provided that in case of failure of claimant to deliver any or all of the armor contracted for there would be deducted from any payment to be made to claimant 1/30 of 1% of the contract price of all of the armor remaining undelivered for each and every day of delay in the completion of the contract, not, however, by way of penalty but as liquidated damages.

It was, however, provided in article 8 of the contract that the Chief of Ordnance in case of delay in the delivery of the armor as provided in article 1 of the contract, instead of completing the manufacture or delivery of the material at the expense of claimant, might waive the time limit and deduct from any payment due or to become due the liquidated damages, if any, provided for in article 4: "*Provided*, however, that in making final settlement based upon the date of completion of the delivery, the party of the first part [claimant] shall receive credit for such delays occurring during the performance of the contract as the Chief of Ordnance may determine to have been due to unavoidable causes, such as fires, storms, labor strikes, action of the United States, etc., and the date of completion shall be considered for the purposes of final settlement as the date of the actual completion of the delivery less the delays due to unavoidable causes; but none of the above causes shall constitute a basis for an action against the United States for damages."

The Government filed a demurrer to the petition. It was sustained as to $7,564.08 of the amount sued for and overruled as to $1,031.08. The damages on account of delay to the amount of the latter sum the court found was due to the Government's delay. The other sum, that is $7,564.08, the court attributed to the claimant, the court saying, through Chief Justice Campbell, that "the difficulties under which claimant labored were not due to 'unavoidable causes' within the meaning of those terms in the contract and, though unforeseen, did not render the performance impossible;" and added: "The court cannot make a different contract from that which the parties made for themselves. *The Harriman*, 9 Wall. 161, 172; *Sun Printing & Publishing Ass'n* v. *Moore*, 183 U. S. 642; *Satterlee's Case*, 30 Ct. Cls. 31; *Pacific Hardware Co.* v. *United States*, 48 Ct. Cls. 399."

It will be observed that the point in the case is a short one. It is whether the causes of delay alleged in the petition were unavoidable or were of the character described in the contract, that is, "such as fires, storms, labor strikes, action of the United States, etc." The contention that the alleged causes can be assigned to such category creates some surprise. It would seem that the very essence of the promise of a contract to deliver articles is ability to procure or make them. But claimant says its ignorance was not peculiar, that it was shared by the world and no one knew that the process adequate to produce 14-inch armor plate would not produce 18-inch armor plate. Yet claimant shows that its own experiments demonstrated the inadequacy of the accepted formula. A successful process was therefore foreseeable and discoverable. And it would seem to have been an obvious prudence to have preceded manufacture, if not engagement, by experiment rather than risk failure and delay and their consequent penalties by extending an old formula to a new condition.

But even if this cannot be asserted, the case falls within *The Harriman, supra,* where it is said that "the principle deducible from the authorities is that if what is agreed to be done is possible and lawful, it must be done. Difficulty or improbability of accomplishing the undertaking will not avail defendant. It must be shown that the thing cannot by any means be effected. Nothing short of this will excuse performance."

And it was held in *Sun Printing Ass'n* v. *Moore, supra,* that "it was a well-settled rule of law that if a party by his contract charges himself with an obligation possible to be performed, he must make it good, unless its performance is rendered impossible by the act of God, the law or the other party. Unforeseen difficulties, however great, will not excuse him." Cases were cited, and it was said the principle was sustained by many adjudications.

It was said, however, in *The Harriman,* 9 Wall. 161, 172, that "the answer to the objection of hardship in all such cases is that it might have been guarded against by a proper stipulation," and such a stipulation is relied on in the case at bar. Ignorance of the scientific process necessary for face-hardening 18-inch armor plate is asserted to be an unavoidable cause of the character of the enumeration of article 8 of the contract, that is, "such as fires, storms, labor strikes, action of the United States, etc." The contention is that it is the same "genus or kind," because (1) it was not foreseeable when the contract was made; (2) was not the result of any act or neglect on the part of claimant; (3) was not a cause the company could prevent. What we have already said answers these contentions. Ability to perform a contract is of its very essence. It would have no sense or incentive, no assurance of fulfillment, otherwise; and a delay resulting from the absence of such ability is not of the same kind enumerated in the contract—is not a cause extraneous to it and

independent of the engagements and exertions of the parties.

*Judgment affirmed.*

Mr. Justice McReynolds took no part in the consideration and decision of this case.