Graham, Judge,
concurring:
I concur in the opinion of the court as to the application of the act of June 15, 1917, to the facts in this case. There *52 is, however, a feature of the case which, in my opinion, would bar a recovery by the plaintiff of anticipated profits even if said act had not been in existence at the time this contract was entered into.
The contract contains the following provision, being No. 7:
“ The United States may, by a written order to the contractor at any time, make reasonable changes in the drawings, specifications, or provisions in this contract. If any changes are made increasing or decreasing the amount due under this contract an equitable adjustment will be made. The contractor must submit evidence of the amount involved by such change, and, if agreed to, the contract .will be accordingly modified by exchange of letters.”
It will be noticed from this provision that there is a comma after “ drawings,” a comma after “ specifications,” and the word “ or ” follows “ specifications,” and is used in a disjunctive sense.
The record shows that the specifications in this case and the “ provisions in the contract ” are entirely distinct. In some of these Government contracts certain conditions are found in the specifications. It is not the case here. On the contrary the specifications relate entirely to the mechanism and mechanical details of the structure and embody no provisions of the contract, such as quantities to be delivered, time of delivery, etc. The provisions of the contract are in a separate and distinct part from the specifications. Most of them, including the provision now being considered, are in printed form and separately attached to the original contract. So that there can be no doubt that the word “ specifications ” as used in this provision did not cover the “ provisions in the contract” any more than they covered the drawings, or than the drawings covered the specifications. It will be plainly seen, from what is hereafter stated, that the very purpose of this provision was to prevent a claim for breach of contract by reason of a change made necessary by a change in equipment and construction of vessels of the Navy occurring after the contract had been executed, and was intended to cover just such a case as that which we have before us. For instance, in this case shortly after the contract was executed it became necessary to change the size of *53 the platforms of the scales to make the scales of varying sizes, and this was done and no question was raised by the plaintiff as to the right of the Government to do it.
This quoted provision gives the right to the Government to make changes, first, in the “ drawings ” as drawings; second, in the “ specifications ” as specifications; and third, “ or provisions in the contract.” The right to make changes in the provisions is just as distinct from the right to make changes in the specifications as the right to make changes in the specifications is from the right to make changes in the drawings. As stated in the provisions, changes must be reasonable, but within the limits of what is reasonable there can be no candid doubt as to the meaning of this section if its meaning is to be gathered from its language. There is nothing ambiguous about it. The word “ provisions ” has a distinct and well-known meaning as related to the contract. It is not for the court to limit and qualify the meaning by coloring it with some supposed intentions of the parties.
There is nothing in the evidence, there is no suggestion anywhere in the case, that’ this provision was inserted by accident or mistake or that it was not understood to be an integral part of the contract, or that it was not intended to convey the meaning which its language imports. It stands as an unquestioned important element of this contract, and it is for the court to construe and enforce it as it finds it, according to its meaning and intent as shown by its wording. There is nothing elsewhere in the contract that contradicts this provision or tends to give it any other meaning than that which its terms denote. The fact that such a provision might tend to work a hardship on the other party to the contract, the fact that it gave one party to the contract seemingly undue powers, or that its strict application worked a hardship, are all matters that the court can not consider in giving a construction.
“ The court can not make a different contract from that which the parties made themselves.” Carnegie Steel Co. v. United States, 240 U. S. 156, 164.
“ The answer to the objection of hardship in all such cases is that it might have been provided against by a proper stipulation.” The Harriman, 9 Wall. 161, 172. See also Plumley v. United States, 226 U. S. 545, 547.
*54 In the case of Wells Bros. v. United States, 254 U. S. 83, 87, there was a provision in the contract as follows:
“ The United States shall have the right to suspend the whole or any part of the work herein contracted to be done, whenever in the opinion of the architects of the building or of the supervising architect it may be necessary. * * * The contractor will make any omissions from, additions to, or changes in the work or materials herein provided for whenever required by said party of the first part * * * and that no claim for damages on account of such changes or for anticipated profits shall be made or allowed.”
Justice Clarke in delivering the opinion of the court in that case said:
“ We are dealing with a written contract, plain and comprehensive in its terms, and the case is clearly ruled in principle by Day v. United States, 245 U. S. 159 161; Carnegie Steel Co. v. United States, 240 U. S. 156, 164, 165; Dermott v. Jones, 2 Wall. 1, 7, and Chouteau v. United States, 95 U. S. 61, 67, 68.”
In the same case commenting upon Goveimment contracts he said:
“ Inexperience and inattention are more likely to be found in other parties to such contracts than the contractors, and the presumption is obvious and strong that the men signing such á contract as we have here protected themselves against such delays as are complained of by the higher price exacted for the work.”
To understand the meaning and purpose of this provision it should be remembered that this was a contract connected with the equipment of ships in the Navy. It is well known how rapidly a ship for use in the Navy becomes antiquated and useless by reason of the changes and improvements in the equipment and structure of such vessels. A change in the structure of a vessel brings about a change in its equipment. A new invention, a new discovery, or a new design— and these are appearing every day, apparently — may make it necessary in each case to change the equipment. This occurs not only while ships are in construction but after they are completed. It is, therefore, not only wise but necessary in the purchase of equipment to provide for a situation where a change in equipment may render materials previously ordered unnecessary and useless, in order to relieve *55 the Government from loss by the delivery of useless or needless material. The Government can protect itself fully, in cases where contracts have been entered into, by providing in those contracts for the right of cancellation at the option of the Government, which is frequently done, or the right at any time to make a “ change in the drawings, specifications, or provisions in the contract,” such as was inserted in this contract. It may very naturally happen also that, by a change in equipment of certain classes of vessels in the Navy, less or greater quantities are desired under a certain contract, and in order to cover such an exigency it becomes necessary to provide for it in the contract. Hence it is easy to see the occasion for inserting such a provision as this in Navy contracts.
This view of the matter is sustained when it is understood that the Navy has a printed form of provisions for supplying equipment and materials which it attaches to and makes part of many of its contracts, what might be called a stock form, and this was the form which was made a part of this contract. The original contract shows that all of the provisions in this contract, from 1 to 16, inclusive, are from the usual printed or stock form and are attached to the contract in printed form, the other portions of it being typewritten.
It is not necessary to discuss further the principles governing the construction of contracts. The language of this provision is so plain, comprehensive, and unequivocal as to leave no room to doubt its meaning, if that meaning is gathered from its language. Its purposes, as explained, and the reason for its insertion in the contract by the Government are equally plain, and if anything more were needed to further sustain the view herein presented it is found in the fact, as repeatedly stated in the correspondence, commencing at the very beginning of it, two weeks after it was executed, which shows that the desire of the Government to take a less number of scales than called for in the contract grew out of a change which had occurred “ in the equipment of ships in the Navy ” after the execution of the contract.
It follows that if the Government had a right to make changes in the provisions in this contract, and thus modify *56 it, it had a right to decrease the number of scales called for in the contract, in which event the plaintiff conld only recover what would be equivalent to just compensation, such a sum as would make him whole up to the date of notification of change in the provisions. This would mean just compensation, but would not include prospective profits. It would be what this provision of the contract says it should be, a sum fixed on the basis of an equitable adjustment. It is hardly necessary to point out that an equitable adjustment could not be intended to include prospective profits, for otherwise there would be no occasion for the inserting of a provision of the kind under discussion. This provision provides the method of arriving at this equitable adjustment, which is as follows:
“ The contractor must submit evidence of the amount involved by such change, and, if agreed to, the contract will be accordingly modified by exchange of letters.”
It will be seen from this that, for the contractor to secure payment for the sum involved in the change, whether it was due to an increase or a decrease over the sum fixed in the contract, it was necessary for it to take the initiative, if it desired an adjustment, and submit evidence of the amount involved, and if this is agreed to the contract will be modified by exchange of letters. Hence in this contract the contractor has not only agreed that the Government shall have the right to make reasonable changes in the provisions of the contract but1 he has agreed to the method to be pursued in order to secure compensation for any additional cost or loss involved in the change. Before it can claim payment for this additional cost it must show that it has complied with the requirements of the contract for ascertaining the amount. Not only did it not submit any satisfactory evidence of the amount of this additional cost or loss by reason of the change decreasing the quantities prior to the bringing of this suit, but it failed to respond to repeated requests of the Government for such evidence and finally refused to allow the Government’s representative and inspector to go upon its plant and secure it. Of course, this has no reference to the 497 scales which were received and paid for, but to the *57 amount, character, and value of material on hand, labor done, etc., such items as would go to make up just compensation. If it has failed to submit evidence it has no standing to recover.
There is left for consideration only one other question in connection with this provision, and that is the question of what was a “ reasonable ” change and whether the change made here by the Government in refusing, as alleged, to accept 688 of these scales out of 1,185, was a reasonable change. What is reasonable is always a question for the jury and is dependent upon the facts of each case. If the change works a hardship upon the plaintiff it would be an element to be considered in reaching a decision just'as if it did not work a hardship, the same fact-would be considered. It may be said, where a reduction in quantity was one-half, or a little more than one-half, that the matter of reasonableness would depend upon the pecuniary situation in which this change would leave the plaintiff. If in spite of the change it appeared that the plaintiff had made on the portion of the goods accepted and paid for not only a reasonable profit, but an excessive profit, a profit which amounted to more than a reasonable profit on the whole order had it been supplied, it can not fairly be said that the change worked any hardship or was unreasonable. Let us see in what financial condition the plaintiff was left by this change. The plaintiff’s testimony and the findings of the court show that it had a profit of 270 per cent on the 575 scales delivered. As stated, the plaintiff’s capital stock was $100,000. It did not have facilities for manufacturing and it did not manufacture in its plant any of these scales. Two-thirds of the work was done by subcontractors. It only did the assembling, polishing, machining, and finishing. It was engaged in the manufacture and delivery of these 575 scales certainly not more than five months. It realized and was paid a sum for these scales delivered which gives it, according to its own showing, a profit of $114.91 per scale, or a total profit of $57,111. This would be equivalent1 to a profit of over $48 per scale on a cost price of $40.02, for the whole 1,185 scales •called for by the contract, a profit of over 100 per cent for *58 not over five months’ work. It surely is not unfair or unjust to hold, in view of this result, that the change made by the Government in decreasing the quantity was reasonable.
It is well known that contractors for the Government are not unsophisticated and take the necessary precautions and make provision in the sum bid to meet the exactions in the contract which the nature of the Government’s work requires. The unusual and broad powers reserved in these contracts in order to allow it to retain control of the work are well known, and contractors make their profits sufficiently large to protect themselves against such contingencies. It is also well known that these stringent provisions in Government contracts are usually taken into consideration by contractors making bids for Government work. It is fair to assume that it was done in this case, and it seems from the profits realized and expected to be realized that the amplest provision was made.
It will be noted that the following language is in this provision, after authorizing the Government “ at any time ” to make reasonable changes:
“If any changes are made, increasing or decreasing the amount due under the contract, an equitable adjustment will be made. The contractor must submit evidence of the amount involved by such change, and if agreed to the contract will be accordingly modified by exchange of letters.”
This language indicates: First, that the Government could make a change increasing or decreasing the amount due under the contract. Second, that if this were done the amount in either event would be arranged between the parties on the basis of an equitable adjustment. Third, that before the-contractor could receive compensation for the amount involved in either of these changes it was necessary for him to submit evidence as to the amount, And, fourth, that these latter provisions were for the benefit of the contractor.
Ways can be readily conceived in which the amount might be increased and why, in case it was, the contractor would be-moved to submit evidence as to the amount. But it is difficult to conceive of a case in which the amowrvb had teen decreased where the contractor would be moved to submit evi- *59 clence, except in one case, namely, of a decrease in quantity, because there the decrease would affect the contractor detrimentally. Any other decreases would be to his advantage. It would be to his interest to say nothing about them. So it would seem that the use of this word “ decrease ” indicated that the decrease in the quantity or number of scales was contemplated. It may be urged that the provision does not say increase or decrease in quantity but used the word “ amount.” It, however, will be readily seen that ultimately, whatever the change, the matter in dispute would be the amount involved. So that the word “ amount ” would cover a change in quantity as well as any other change.
It has been urged that the use of the word “ reasonable ” in effect meant that it should be by consent of the parties. That is to say, that if the defendant demanded a change which the plaintiff considered unreasonable the plaintiff could refuse to perform, treat the demand as a breach of the contract, and sue and recover on a breach. It is evident that if this construction is accepted the whole clause is purposeless and useless. If the change had to be made by consent of the parties, there was no occasion for inserting such a provision in the contract. If the right to make the change could be defeated by the opinion of the plantiff that it was unreasonable, there would be no purpose in inserting the provision. It follows that where there is a difference on the question of reasonableness and the parties can not agree that question must be settled and passed upon by a court should the matter go to litigation. So in this case, assuming that the Government had a right to change the provision of the contract as to quantity and decide to take a less number of scales than the contract called for, the question of whether such a change was reasonable is a matter to be decided in the trial of the case, the parties having failed to agree. It is a question of fact and must be decided in the light of all the circumstances surrounding the transaction. Whether the change made in this case was reasonable has been heretofore discussed.
It follows if the Government had a right under provision 7 to change the contract by decreasing the quantity of material *60 to be furnished that there has been no breach of contract, and consequently no ground upon which the plaintiff can recover in this action prospective profits on the 688 scales not delivered.