■■ There is another item of $5 for emancipating the youngest of the two girls.

This admittedly is not a proper charge against the funds of the succession. This item should be disallowed, and the fee of the auctioneer and that of the notary for taking the inventory of the succession property and the fee of the appraisers for assisting should be reduced to the amount as fixed by law. The fees of the notary and of the appraisers for taking the second inventory covering the life insurance should be disallowed.

The five items to which we have made special reference, and which are all law charges,

absorb approximately 60 per cent. of this small succession, and with the other items on the account cut off the appellant and other creditors from any participation in the funds of the succession.

As the case will have to be remanded to permit the appellant to present and make proof of its claim, and to oppose such items of the account as may be illegal and excessive, we shall leave the recasting of the account to the court below.

It is therefore ordered and decreed that the judgment of homologation appealed from, as well as the judgment discharging the administratrix and canceling her bond, be and they are annulled and set aside and the case is remanded to the lower court to be proceeded with in accordance with this opinion.

The cost of the appeal to be paid by the administratrix.

ROGERS, J., takes no part.

■

(123 So. 611)

No. 29846.

**TERRILL CONST. CO. v. TOWN OF PINE-VILLE.**

June 17, 1929. Rehearing Denied July 8, 1929.

Overton & Hunter, of Alexandria, for appellant.

Peterman, Dear & Peterman and Polk & Robinson, all of Alexandria, for appellee.

LAND, J. This is a suit for the alleged breach by the town of Pineville of a certain contract for the construction of a sewer system, entered into between the town authorities and the Terrill Construction Company, the plaintiff.

The breach alleged on the part of the town was its failure to obligate itself in advance to pay for certain sheath piling which plaintiff company thought proper to use in making excavations in Melrose street.

This breach is alleged to have occurred when two-sevenths of the work was as yet incomplete, and plaintiff brings this suit to recover the retained percentage held by the town under the contract, and for anticipated profits on the balance of the work.

Plaintiff company prosecutes this appeal from a judgment maintaining defendant's exception of no cause or right of action, and dismissing its suit.

1. At the outset it is necessary to dispose of the objection of defendant to the form of action brought by plaintiff.

Plaintiff company's suit is predicated upon a state of facts alleged in its petition and from which it deduces an active breach by defendant of the contract for which it claims damages. Plaintiff's action is clearly brought under articles 1930, 1931, 1932, and 1934 of the Civil Code, relating to damages resulting from the inexecution of obligations.

Defendant contends that Act No. 224 of 1918, relating to contracts for public works, prescribes an exclusive remedy and one that must be followed by plaintiff company, as contractor in the present case.

Section 4 of this act provides: "That if, at. the expiration of said forty-five days (*from the default of the contractor or the acceptance of the work*) there are recorded claims filed with the said authorities and recorded in the mortgage office unpaid, *the said au-*

*thorities shall · file a petition* in the proper court where the work was done citing such claimants and the contractor, subcontractor and surety on the bond, *and the said authorities shall assert whatever claims* they have against any and all of them in said petition, and require the said claimants to assert whatever claims they have against any and all of them, and all of said claims shall be tried in concursus."

This act, by its plain provisions, contemplates recorded claims of furnishers of labor and material, and either an admitted default of the contractor or an acceptance of the work.

Not one of these prerequisites is present in this case. The petition alleges no recorded claims, no acceptance of the work, and admits no default on the part of the contractor. On the contrary, it is alleged by plaintiff that defendant itself is in default, having breached its contract. If the only remedy plaintiff, as contractor, had under these circumstances was to wait until defendant (the town authorities) took the initial step by filing a petition under Act No. 224 of 1918, *admitting its breach of contract* and provoking a concursus, the result might be that plaintiff would be without remedy or redress at all in the present case, as the defendant, in our opinion, would not have filed such a petition in any event. The contention of defendant is therefore without merit.

2. It appears from the allegations of the petition that the Terrill Construction Company on March 21, 1928, entered into a written contract with the town of Pineville to build and construct a sewerage system, and that, after completing only five-sevenths of the work contemplated, plaintiff company stopped work on December 14, 1928. At that date it is estimated that 1,200 feet of the sewer line were left incomplete on Melrose street, and that

20,800 feet of the line remained to be completed exclusive of this street.

The sewer pipe was to be laid in trenches excavated by the contractor, the Terrill Construction Company. In order to lay the pipe along Melrose street according to the plans and specifications, it was necessary to excavate the trench to a depth of from 17 to 34 feet. In beginning the excavation on that street, the contractor encountered running sand or quicksand. In attempting to proceed properly according to the terms of the contract, the contractor found that it would be very expensive for him to excavate the trench for the laying of the sewer pipe line on Melrose street, in that it would be necessary for him to brace the walls with four-inch instead of two-inch sheathing. Plaintiff alleges that the difference in the contract price ranged from $13,500 to $22,500, amounts in excess of the avails of the special issue of bonds sold by the town of Pineville for the construction of its sewerage system.

In our opinion, plaintiff's whole cause of action is predicated upon the following erroneous construction of its contract:

First. That plaintiff, as contractor, *is not primarily bound* to properly support the trenches, as they are excavated, with temporary sheathing of such thickness as the engineers for the town of Pineville may require.

Second. That the cost of all sheathing in excess of two inches in thickness must be borne by the town of Pineville, when used temporarily in excavations.

Third. That the engineers of the town having ordered plaintiff *in advance* to use four-inch · sheathing in the excavations on Melrose street, the town authorities actively violated the contract with plaintiff by setting aside this order.

Fourth. That the town, having finally ordered plaintiff to proceed with the excavation

on Melrose street with two-inch sheathing, made the contract impossible of performance as well as dangerous in execution, in that the walls of the excavation would cave and imperil the lives and limbs of plaintiff's workmen, and would break the gas main of the Southern Gas Company, located on Melrose street, with resulting danger to the lives and property of the entire town.

The contract between plaintiff and defendant is annexed to and made a part of the petition in this case. It is stated in this contract that: "He (the contractor) declares that *he has examined the site of the work and informed himself fully* in regard to all the conditions pertaining to the place where the work is to be done; and that he has examined the form of the contract and of bond set forth in the specifications, the specifications and the drawings therein referred to, and has read the Instructions to Bidders referring to the work, *and has satisfied himself as to all matters relating to the work to be performed.*"

Plaintiff is therefore presumed to have known the depth of the excavations on Melrose street, the fact that the gas main of the Southern Gas Company was located on that street, and in close proximity to the sewer line to be excavated.

In other words, the Terrill Construction Company is presumed to have been acquainted with the dangerous character of the work undertaken by it under its contract with defendant.

Plaintiff company alleges the possibility of the performance of the contract with four-inch sheathing as support to the walls of the excavation.

In Picard Construction Co. v. Board of Com'rs of Caddo Levee District, 161 La. 1007, 109 So. 818, it is said in part: "But under our law there is a sanctity about contracts as great as elsewhere:

"'Agreements legally entered into have the effect of laws on those who have formed them. * * * They must be performed with good faith.' R. C. C., art. 1901.

"Hence it follows that a party is obliged to perform a contract entered into by him if performance be possible at all, and regardless of any difficulty he might experience in performing it; thus: 'The object of a contract must be possible. * * * The possibility must be determined, not by the means or ability of the party to fulfill his agreement, but by the nature of the thing which forms the object of it.' R. C. C., art. 1891."

Again it is said in the same case at page 1008 (109 So. 818) of the opinion: "And the difficulty one may have in performing a contract is simply no excuse whatever for not performing it"—citing North German Lloyd v. Guaranty Trust Co., 244 U. S. 12, 22, 37 S. Ct. 490, 61 L. Ed. 960, 965; Day v. United States, 245 U. S. 159, 38 S. Ct. 57, 62 L. Ed. 219, citing Carnegie Steel Co. v. United States, 240 U. S. 156, 36 S. Ct. 342, 60 L. Ed. 576; Globe Ref. Co. v. Landa Cotton Oil Co., 190 U. S. 540, 23 S. Ct. 754, 47 L. Ed. 1171.

Nor is the danger of the execution of the contract in this case any excuse for not performing it, as it was the plain duty of plaintiff company under the contract to have used, at its own expense, four-inch sheathing as a temporary protection to the walls of the excavation as it progressed, when plaintiff was ordered to do so by the engineers of the town authorities.

It is expressly provided in the contract that: "*The Contractor shall, at his or their expense, properly support the trenches when necessary in the opinion of the Engineers*, by sheathing and bracing, or otherwise to keep the cut vertical. *All materials* used for this purpose shall be sound *and of proper size* and quality, *and the right is hereby reserved by*

the *Engineers to refuse* to allow sewers to be laid in trenches, *which in their opinion are unsafe*, either from lack of sheathing and bracing, or from the amount, quality or method of placing. The sheathing used shall not be *less* than 2″ thick, and such material shall be *as much thicker as the conditions 'demand."*

The sheathing referred to in the above part of the contract is *the temporary sheathing* placed in the excavation as it is made. This sheathing must be used in the first instance *at the expense* of the contractor, and can become a charge against the town of Pineville, under the contract, only after *it is inspected and left in place* by the engineers of the town, and then only *upon their written orders.*

█ This construction of the contract is made apparent by the following paragraph: "All sheathing, bracing, etc., shall be placed by skilled workmen, and shall be so arranged *as to permit its withdrawal as the work progresses*, and as the trenches are being backfilled, without endangering the finished structures or the adjacent street or property. *When in the opinion of the Engineers* it is considered desirable that the sheathing and bracing, or certain parts of it *be left in place, the Contractor shall cut off the tops of all sheathing 12″ below the top of the ground.* Sheathing shall only *be left in the trench at the written order of the Engineers,* and which order shall distinctly state *the place and amount of sheathing to be left in place.* It is understood that *no claim shall be made or entertained for sheathing,* bracing, or other material *left in place except at the written orders of the Engineers,* as specified above, *and when so ordered it shall be estimated at the price stated in the Contractor's proposal 'Lumber' under Item 7."*

Plaintiff company does not rely in this case upon any alleged breach by the town of Pine-ville of any written order of the engineers *for the cost of permanent sheathing left in place in the trenches* on Melrose Street.

Before any sheathing was used at all in these trenches, plaintiff company obtained from the engineers of the town of Pineville an order to use four-inch sheathing *in advance* of the excavation, and to be left permanently in the trenches. This was done in plain violation of both the letter and the spirit of the contract between the parties. It was an attempt on the part of plaintiff company to saddle upon the town of Pineville the whole cost of *temporary sheathing,* which had to be placed in the trenches *at plaintiff's cost,* before any inspection had been made by the engineers, and before any written order had been received from them to leave the sheathing *already in place* as a permanent support to the walls of the trenches. It is manifest that such order was not binding upon defendant, who had a clear right under the contract to have it rescinded, without being made amenable at all for any breach of the contract.

The contention of plaintiff company that defendant sought to compel it to perform the sewer contract in a way impossible, as well as dangerous, by the use of insufficient two-inch sheathing as a support for the walls of the trenches, is without persuasive force, in view of the fact that it was the plain duty of plaintiff company, under its contract, to have used temporary sheathing of proper size and strength for that purpose.

Our conclusion, therefore, is that defendant is not guilty of an active breach of the contract, and that plaintiff company, having failed to perform its part of the contract, is without standing in court to recover damages.

Judgment affirmed.

OVERTON, J., recused.