**JONESBORO COMPRESS CO. v. MENTE & CO., Inc. ***

**MENTE & CO., Inc., v. JONESBORO COMPRESS CO.**

**Nos. 9897, 9898.**

Circuit Court of Appeals, Eighth Circuit.

July 13, 1934.

Rehearing Denied Sept. 14, 1934.

*Writ of certiorari denied 55 S. Ct. 210, 79 L. Ed. —.

W. R. Roddy, of Little Rock, Ark. (J. W. House, C. H. Moses, and W. H. Holmes, all of Little Rock, Ark., on the brief), for Mente & Co., Inc.

Shields M. Goodwin, of Little Rock, Ark. (S. M. Casey, of Batesville, Ark., and E. P. Mathes, of Jonesboro, Ark., on the brief), for Jonesboro Compress Co.

Before SANBORN and BOOTH, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge.

The facts out of which this controversy arises are virtually undisputed. On April 1, 1926, the Jonesboro Compress Company (which will be referred to as the "buyer") agreed, in writing, to purchase from Mente & Co., Inc., as seller, "3 cars (about 30,000 lbs. each) Mente New Rewoven Patches about 3 lb. F. O. B. N. O. [New Orleans] at 7.91¢ per lb." The contract contained the following provisions:

(1) The goods "to be shipped as ordered between September 1, 1926, to Jany. 15th, 1927."

(2) "Failing to receive timely shipping instructions or prompt payment Seller at its option may ship approximately equal quantities monthly or declare this order cancelled either in whole or in part, and if instructions be not received for shipment of entire order during term herein fixed, Seller need not tender the goods nor put buyer in default, but Seller may then or thereafter at its option either cancel this order or invoice entire undelivered balance and recover full purchase price therefor with interest at highest conventional rate from time goods should have been delivered, and may withhold delivery until full payment plus carrying charges of two per cent per annum from time goods should have been delivered until delivery made."

(3) "Interest at highest conventional rate will be charged for any delay in payment and security may be demanded before manufacture or shipment. Title to goods shipped hereunder shall remain in Seller until paid for, whether goods be in possession of Buyer or others, and whether filled or empty; but

if illegal to so retain title then Buyer grants and Seller retains a specific lien to secure any unpaid purchase money."

(4) "Conditions of this order apply to goods hereby sold; * * * it is not guaranteed against declines, is not subject to cancellation and Buyer's rights cannot be sold or assigned without Seller's written consent."

The contract was signed on behalf of the buyer by S. R. Gibbons, who was the manager of the buyer. It was confirmed by the seller by telegram on April 1, 1926, and on April 7, 1926, by letter. About October 20, 1926, the salesman of the seller called on the buyer and asked when it was going to order out the patches. He was told that Mr. Gibbons was no longer connected with the buyer, and new managers had been appointed; that those in charge of the business had no knowledge of the contract. The salesman wrote the seller to send copies of the contract to the buyer, which was done on October 22, 1926. On December 18, 1926, and on January 13, 1927, the seller wrote the buyer for shipping instructions. It received no reply. On February 7, 1927, the seller wrote again, calling attention to its unanswered letters and the expiration of the shipping period, and again asked for shipping instructions. The buyer answered this letter on February 10, 1927, stating that Gibbons, the former manager, was without authority to make the contract; that the writer of the letter, Mr. Smith (who signed as "Accountant"), understood that the contract "permitted the purchase of three cars of patches"; that he did not "feel" that his company was obligated to accept three cars of patches; and, in conclusion: "As I view the matter the only thing that I can see is to cancel the contract that you have, but I shall be glad to hear further from you and shall be glad to have a copy of the contract or order which you have covering the bagging, in order that I may submit the same to Mr. Stewart." On February 14, 1927, the seller replied, expressing its surprise that any question should at that late date arise as to the validity of the contract, calling attention to the fact that the contract was an outright purchase contract, that copies of it were forwarded to the buyer on October 26th, and stating that the seller was not in a position to cancel, and that, unless it received shipping instructions by February 21st, the goods would be invoiced. On February 21, 1927, the seller again wrote, asking for shipping instructions. On March 3, 1927, it wrote asking for replies to its former letters. On March 17, 1927, having received no replies, it inclosed an invoice

for the patches, amounting to $7,119 plus interest of $109.16, less freight New Orleans to Jonesboro, $369, leaving a net balance due the seller of $6,859.16, and asking for remittance. On May 30, 1927, the seller wrote to the buyer at both Gulfport and Jonesboro, asking what the buyer proposed to do about the three cars of patches. On June 1, 1927, the agent of the buyer at Gulfport stated that the letter would be taken up with the local office and that he would get in touch with the seller as soon as he had the requisite information. So far as the record shows, this was the last letter from the buyer. On June 20, 1927, the seller wrote the buyer, stating that "we would like very much to come to an understanding as to when we will receive shipping instructions on the remainder due." The seller received no remittance and no shipping instructions. In 1931, and before the statute of limitations had run against its cause of action, it brought suit to recover the purchase price of the goods, with interest at 8 per cent., the highest rate allowed by the laws of Arkansas. The buyer in its answer admitted that it was a corporation, but denied everything else.

The case was tried to the court without a jury, upon depositions and a stipulation of the parties that Gibbons was authorized to execute the contract for the buyer. The evidence and stipulation established the facts above stated, and also proved that the seller was at all times ready, able, willing, and anxious to fulfill its contract with the buyer, but that it had at no time segregated, for the buyer, from its general stock of patches, the three carloads called for by the contract.

The deposition of Mr. Hamilton, the manager of the seller, showed that, on cross-examination, he was asked this question: "You understood in their letter of February 10th, which you have introduced in evidence, that they declined—a letter by Mr. Smith of Jonesboro Compress Company to you, introduced as Hamilton-20, that they were repudiating and seeking to cancel the contract, didn't you?" Mr. Hamilton's answer was, "Yes."

Requests for findings and declarations of law were made by both parties. The court found generally in favor of the seller, but refused to add interest to the judgment for the purchase price. Hence both sides appealed. The appeals were consolidated and come before us on a single record.

The contentions of the buyer are: (1) That it repudiated the contract by its letter of February 10, 1927, and thereafter the seller had only a cause of action for damages;

(2) that the seller could not recover the purchase price in any event, for the further reason that it had never appropriated any specific goods to the fulfillment of the contract.

The seller contends that the court reached a correct conclusion so far as allowing it the purchase price of the goods, but that it had no power to disallow the interest provided for in the contract.

The buyer has attempted to make a complicated matter out of what seems to us to be a very simple one. The seller offered to sell its goods to the buyer upon certain terms. These terms the buyer accepted and became bound by. The buyer was to give shipping instructions at any time up to January 15, 1927. If it failed to give them, the seller was to have the right to invoice the goods without delivering them and to have the purchase price plus interest, less freight charges to Jonesboro, while still retaining title to the goods until paid for. By its terms, the contract was not subject to cancellation except by the seller in case the buyer should refuse shipping instructions. We know of no reason why the buyer might not make such a contract, and no reason why it was not bound by it after it was made, and our attention has been called to none. The obligation imposed upon the buyer by the contract was plain, as were also the rights of the seller. There is nothing in the contract about segregation of the goods from the general stock, and the obligation to pay the purchase price was not based upon segregation or delivery or the passing of title or upon anything more than the invoicing of the goods.

The rules of law, which might have been applicable had there been a different contract and had the goods been sold to be paid for upon delivery, are entirely beside the point. Because of the agreement of the parties, there was, under this contract, no necessity for either an actual or a constructive delivery of the goods as a condition precedent to recovery of the purchase price. The fact that the seller here was able and anxious to perform, and did all that it was required by the terms of the contract to do to induce the buyer to accept performance clearly entitled it to maintain this suit for the amount which the buyer agreed the seller should have if the buyer refused to accept performance and the seller exercised its option to invoice the goods.

So far as the alleged repudiation of the contract is concerned, the court made no finding of any repudiation, and we fail to see that the evidence compelled any such finding. The letter of February 10, 1927, was a querulous complaining letter, misquoting the nature of the contract and offering suggestions to the seller. The contention that Mr. Hamilton, manager of the seller, virtually admitted upon the stand that the contract had been repudiated, is inaccurate. The effect of what he said was that he understood, from the buyer's letter of February 10th, that the buyer was repudiating or was seeking to cancel the contract. The letter clearly indicated that the buyer was casting about for excuses to avoid the obligations of the contract. Neither the letter nor Mr. Hamilton said that the buyer had repudiated or canceled the contract. The contract was apparently not subject to repudiation, if its express terms are to be given effect, but, even if it was, we think the buyer had not repudiated it.

The only rule of law which it seems necessary to apply to this case is that rule which requires men to fulfill the contractual obligations which they assume. This rule has been stated by the Supreme Court of the United States as follows: "It is a well-settled rule of law, that if a party by his contract charge himself with an obligation possible to be performed, he must make it good, unless its performance is rendered impossible by the act of God, the law, or the other party. Unforeseen difficulties, however great, will not excuse him." Dermott v. Jones, 2 Wall. 1, 7, 17 L. Ed. 762. See, also: Carnegie Steel Co. v. United States, 240 U. S. 156, 165, 36 S. Ct. 342, 60 L. Ed. 576; Columbus Railway, Power & Light Company v. City of Columbus, Ohio, et al., 249 U. S. 399, 412, 39 S. Ct. 349, 63 L. Ed. 669, 6 A. L. R. 1648; United States v. Gleason, 175 U. S. 588, 602, 20 S. Ct. 228, 44 L. Ed. 284; Day et al., Partners, v. United States, 245 U. S. 159, 161, 38 S. Ct. 57, 62 L. Ed. 219.

The contract provides for interest. Since neither the court below nor this court can make a new contract for the parties, the seller is entitled to interest, and the court erred in disallowing it.

It follows from what has been said that the court was right in finding for the seller, but was wrong in disallowing interest.

The judgment is reversed, and the case remanded, with directions to the court below to enter a judgment for the seller in conformity with this opinion.