**TENNESSEE VALLEY AUTHORITY**
v.
**WESTINGHOUSE ELECTRIC CORPORATION.**
Civ. No. 3–75–298.

United States District Court,
E. D. Tennessee, N. D.
Dec. 5, 1975.

related to plaintiffs' motives for suing. *Higgins v. Shenango Pottery Co., supra*, at 525.

**6**

Herbert S. Sanger, Jr., Justin M. Schwamm, Charles W. Van Beke, Robert E. Washburn, Tenn. Val. Auth., Knoxville, Tenn., for plaintiff.

James A. Ridley, III, John B. Rayson, Knoxville, Tenn., for defendant.

### MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This action was filed on October 20, 1975, by the Tennessee Valley Authority seeking declaratory and injunctive relief against defendant Westinghouse Electric Corporation for the repudiation of two contracts to supply nuclear fuel for two

of T.V.A.'s electrical power plants.[1] Before the Court is T.V.A.'s motion for partial summary judgment in its favor on Count II of its complaint on the ground that the complaint and the annexed affidavit of Erik Kvaven, the Contracting Officer on both contracts, demonstrate that there is no genuine issue as to any material fact and that T.V.A. is entitled to judgment as a matter of law. Rule 56, F.R.C.P.

The dispute between the parties is the result of a letter sent by Westinghouse to T.V.A. dated September 8, 1975, in which T.V.A. was informed that Westinghouse considered continuation of the two long-term nuclear fuel supply contracts to be "commercially impracticable." Exhibit C to the Complaint. Westinghouse informed T.V.A. that certain unforeseeable events which had come about since the contracts were entered into prevented Westinghouse from performing about 80 per cent of its obligation to supply nuclear fuel to T.V.A. and that it was excused from such performance under the provisions of Section 2–615 of the Uniform Commercial Code.

Simply stated, T.V.A.'s motion for partial summary judgment is based on the following two contentions:

1. The Uniform Commercial Code is not applicable to the contracts in question here because there are specific contractual provisions governing the rights of the parties and because there is Supreme Court authority which controls the interpretation of these federal contracts; and,

2. the unforeseen price increases in uranium alleged by Westinghouse (and admitted by T.V.A. for purposes of the motion) do not constitute an excuse for nonperformance under the federal common law

[1]. The contracts involved are for the Sequoyah Nuclear Plant (Contract 68P–84–T1) which was awarded to Westinghouse on April 25, 1968, and for the Watts Bar Nuclear Plant (Contract 71P–65–99–1) which was awarded on August 27, 1970.

doctrine of impossibility of performance.

Westinghouse opposes the motion on three grounds. First, that under modern legal principles the Uniform Commercial Code may be applied to federal contract disputes. Second, that the affidavits filed by Westinghouse in opposition to T.V.A.'s motion demonstrate that there are numerous disputed material facts in this case. Finally, that no decision which goes to the merits of the case should be made by this Court until such time as the Judicial Panel on Multidistrict Litigation acts on its motion pursuant to 28 U.S.C. § 1407 to consolidate this case and some eleven or more similar cases for pretrial.[2]

T.V.A. relies on certain provisions in the contracts in question which it contends are controlling with regard to whatever right Westinghouse may have to be excused from performance under the contracts. The provisions provide as follows:

> *"Delays and Remedies.* If the Contractor does not complete the contract or any portion thereof within the time specified, or if he assigns or encumbers any interest in it without prior written consent of TVA, or is thrown into receivership adjudicated a bankrupt, or does not prosecute the work, or any separable part thereof, with such diligence as, in the *opinion of the* Contracting Officer, will insure its completion within the time specified therefor, or fails to carry out any of his other obligations after written notice from TVA, then TVA by written notice to the Contractor may terminate the Contractor's right to proceed

with all or any part of the contract, and prosecute the same to completion by contract or otherwise, and may purchase similar materials or supplies in the open market or secure their manufacture and delivery by contract or otherwise, charging against the Contractor any excess cost occasioned TVA thereby; provided, that if the Contractor within 30 calendar days from the beginning of any delay notifies the Contracting Officer in writing of the causes of delay, the right of the Contractor to proceed shall not be terminated when all of the Contractor's delay is due to causes beyond the Contractor's control and without his fault, such as acts of God or of the public enemy, acts or omissions on the part of TVA, fires, unforeseeably severe weather or floods, epidemics, quarantines, strikes, freight embargoes, priorities ordered by the United States Government, or any act, delay, or failure to act by the Atomic Energy Commission in the issuance of permits and licenses, but excluding delays in issuance of AEC permits or licenses resulting from faulty designs by Contractor or submission of faulty information . . ."

The parties have directed their briefs primarily to the question of whether the common law doctrine of impossibility of performance or the Uniform Commercial Code doctrine of commercial impracticability should be considered the controlling federal common law rule.[3] These efforts have been misdirected if the terms of the contract can be considered to have delineated the rights and liabilities of the parties in

---

2. Rule 16 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation provides in pertinent part that the pendency of a motion to transfer actions "pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court." *See Humphreys v. Tann,* 487 F.2d 666 (6th Cir. 1973); *In Re*

*Four Seasons Securities Law Litigation,* 362 F.Supp. 574 (Jud.Pan.Mult.Lit.1973).

3. It is not disputed by the parties that their rights and liabilities in this action are governed by federal law since the rights and liabilities of the United States are in question. *See Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943).

the present controversy as contended by T.V.A. The threshold issue in this case, as the Court perceives it, is whether the "Delays and Remedies" provision of each contract is controlling. Neither the common law doctrine of impossibility of performance nor UCC § 2–615 will be applicable if the parties can be considered to have bargained for a greater or lesser liability. *See, e. g., Carnegie Steel Co. v. United States*, 240 U.S. 156, 36 S.Ct. 342, 60 L.Ed. 576 (1916); UCC § 2–615, Official Comment 8. For this reason, a determination of which rule represents the federal common law rule would be premature. We think that any analysis of the issues presented in this case must necessarily begin with the "Delays and Remedies" provision of each contract.

T.V.A. contends that the provision rejects the doctrine of commercial impracticability because Westinghouse "is excused only if '*all*' its inability to perform is '. . . due to causes beyond the Contractor's (Westinghouse) control and without his fault . . .' " Thus, says T.V.A. the contracts adopt as the sole ground of excuse the federal common law test of impossibility of performance.

This interpretation of the "Delays and Remedies" provisions is not without difficulty. It appears from a careful examination of these provisions that they may be susceptible to a different interpretation. Specifically, the provisions state that if the Contractor fails to perform in a timely manner, is adjudicated a bankrupt, etc., then T.V.A. may terminate the Contractor's right to proceed with all or any part of the contract. They further provide that if such a termination occurs, then T.V.A. may purchase the nuclear fuel on the open market and charge the Contractor with any excess cost occasioned thereby. T.V.A.'s right to terminate and cover on the open market, however, is qualified by an excuse clause. This clause essentially provides that T.V.A. will not have the right to terminate and cover when the delay is due to causes beyond the Contractor's control and without its fault. Phrased another way, the excuse clause permits Westinghouse, under specified circumstances, to stay in the contract even though performance has been delayed.

■ It appears that the factual situation presented in this case may not be within the purview of these provisions. In this case, Westinghouse is attempting to be excused from its contractual obligations rather than attempting to enforce a right to remain in the contract under the conditions specified in the excuse clause. Furthermore, T.V.A. is seeking to enforce performance rather than terminate the contract and cover on the open market. Relief in the nature of specific performance is sought, while the contract provisions suggest that damage actions were contemplated. For the foregoing reasons, we cannot determine, at this stage of the proceedings, whether or not the clauses in question should be looked to in determining the rights and liabilities of the parties. Since we cannot surmount this hurdle on the basis of the present record, and without hearing evidence at a trial on the merits, we need not pass on the other contentions made by T.V.A. in support of its motion.

There is another compelling reason for denying T.V.A.'s motion for partial summary judgment. Assuming, for the sake of argument only, that the contract provisions control the rights of the parties, then sharply disputed issues of material fact arise as to whether the contingencies listed in the excuse clause have occurred. T.V.A. has conceded, for the purposes of this motion, that there has been a large and unforeseeable increase in the price of uranium since the contracts were executed. Westinghouse, however, has not premised its contention that it should be excused from the contracts on this ground alone. For example, it is alleged in the affidavit of Walter J. Dollard that the scarcity of uranium and certain other events, as well as

the unforeseeable price increase in uranium, have prevented Westinghouse from supplying T.V.A.'s contractual requirements and these events constitute

"'causes beyond the Contractor's (Westinghouse's) control and without his fault', 'acts or omissions on the part of TVA', 'priorities ordered by the United States Government', and acts 'on the part of any federal, state or local authority' as those phrases are used in the subject contract . . ."

From the foregoing it clearly appears that there are or may be questions of fact or mixed questions of law and fact that cannot be determined unless and until the evidence is heard at trial. In that connection, the Court of Appeals for the Sixth Circuit has expressed the view on more than one occasion

"that a trial judge should be slow in disposing of a case of any complexity on a motion for summary judgment, . . . and that a party should not be deprived of an adequate opportunity to fully develop his case by witnesses and a trial . . . ."

*S. J. Groves & Sons Co. v. Ohio Turnpike Comm.*, 315 F.2d 235, 237 (6th Cir.) cert. den. 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57 (1963).

In view of the nature and extent of the relief requested by T.V.A., the stated rule must be applied to the present motion.

■■ The Court is also mindful of the well-settled rule that the materials presented by the moving party in support of its motion must be viewed in the light most favorable to the opposing party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L. Ed.2d 142 (1970). Another rule of equal importance is that a court should avoid piecemeal litigation.

We are convinced that the record is not sufficiently developed at this time for the Court to sustain T.V.A.'s motion for partial summary judgment. The motion for partial summary judgment must be denied.

Order accordingly.