## The Pennsylvania Railroad Company *versus* The Titusville and Pithole Plank Road Company.

1. Whatever an agent does or says in making a contract is evidence against the principal, being part of the contract.

2. The admissions of an agent not made at the time of the transaction but subsequently, are not evidence.

3. Plank to construct a plank road was delivered at a station of a railroad, to be transported to another station; the company did not transport it; if liable in damages, the measure would be the difference of value of the plank at the first station and the station to which it was to be carried, deducting cost of transportation; provided such lumber could be obtained at the latter station and that the carrier should compensate for the delay from his failure.

4. The increased expenses of putting down the plank in consequence of the delay is too remote.

5. The measure is compensation: such damage as might reasonably have been anticipated and been within view of the parties.

6. Plaintiffs contracted for the purchase of plank and employed defendants to deliver it at a certain point; in an action for failure to deliver, evidence was admissible for the defence that portable mills could have been erected, plank manufactured and delivered at the point within the time and at the price plaintiffs were to pay under their contract.

7. It was the duty of the plaintiffs, when they were notified of the inability of the defendants to deliver the lumber, to adopt every feasible means to supply themselves.

8. Hough *v.* Doyle, 4 Rawle 291, adopted.

March 26th 1872. Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ. AGNEW, J., at Nisi Prius.

Error to the Court of Common Pleas of *Warren county:* No. 373, to January Term 1871.

This action was brought, November 9th 1869, by " The Titusville and Pithole Plank Road Company against The Pennsylvania Railroad Company, lessees of the Philadelphia and Erie Railroad Company."

The cause of action was the non-delivery by the defendants of plank for the construction of the plaintiffs' plank road.

The declaration was, that the plaintiffs had 912,812 feet of plank at Columbus and Lovell stations, on the Philadelphia and Erie Railroad, and delivered the plank to the defendants to be carried to the city of Corry for a reasonable reward, &c., that the defendants agreed to carry it to Corry, but afterwards refused to do so; whereby the plaintiffs suffered damage " by extra cost of transportation, loss on plank at Columbus, extra cost and labor in building said Titusville and Pithole Plank Road, for which said plank was specially intended; and by the non-transportation of plank the plaintiffs have suffered great loss in the delay in the completion of their road, and the loss of tolls and travel thereon, and the extra cost of regrading the same, and the cost of passage through adjoining land during the said extra grading," &c.

Additional counts were afterwards filed, charging the defendants,

as common carriers, with having as such received a large quantity of lumber at Wilder's station and Lovell's station, to be conveyed from that place to Corry, and therefore being bound by law to carry the lumber to Corry. Also that the defendants, as common carriers, " by the custom of the country," were bound to receive and transport goods on their railroad, and received the defendants' lumber from Wilder's and Lovell's station, to be transported to Corry to be delivered according to the tariff of prices of the defendants, but the defendants refused to transport the lumber, &c., and the plaintiffs sustained damage by reason of having to hire teams at an advanced rate, on account of not having plank to construct their road; plaintiffs' hands continuing out of employ; having to regrade the road; loss of profits; additional cost of constructing the road in an inclement season; purchase of new plank by which the other lumber became of little value. The other counts did not differ materially from this.

The case was tried, September 6th 1870, before Johnson, P. J.

Corry, at which place the plank was to have been delivered by the defendants, was on the Oil Creek Railroad, twenty-six miles distant from Titusville.

J. J. Holden testified that on behalf of the plaintiff he saw W. A. Baldwin, the superintendent of the defendants, on the 26th of July, and in August 1865, to ascertain why the plank had not been shipped; Baldwin said arrangements had been made to ship it; to be shipped at the rate of six car-loads per day. Witness said they talked about the purpose of the plank.

Oliver Keys, superintendent of the plaintiffs, testified: That the plaintiffs, about the 25th of July, had contracted with Packard & Co. for 3,600,000 feet of plank to be delivered on the 1st of August at Wilder's station, on the Philadelphia and Erie Railroad, about two-and-a-half miles from Corry; Packard & Co., according to their agreement, commenced delivering at Wilder's on the 1st of August, and always had there not less than 200,000 feet; the plaintiff always had men to load the plank. Witness saw Baldwin about the delay in delivering the plank; he said he would remedy it; that one cause of delay was that the Oil Creek Railroad had been blocked up with freight, and he could not get a transfer. Witness said that the plank were to be transported at the rate of six cars per day; the plaintiffs were to pay regular tariff prices. Witness talked to Baldwin strongly about haste, and the importance of having the road done before frost, and the building of a pipe line to divert the oil from the road; "Baldwin said he understood the condition of things." Defendants transported at different times 435,052 feet in all. Witness testified as to the extra cost of hauling the plank, &c. by teaming, beyond that which they were to pay to the defendants. They also gave evidence that they had sold some of the plank which they expected defendants to

21 P. F. Smith—23

transport, and that 400,000 feet were unsold and were burned; that the plank was not merchantable except for plank-road purposes. The only arrangement witness made with Baldwin was on September 4th.

G. H. Coney testified that he saw Baldwin on the 19th of September 1865; Baldwin said he would give instructions for cars to be put at Wilder's station; the lumber not being delivered witness saw Baldwin again on 26th September and asked for cars; he said he would send some the next day; there was no specific number of cars agreed on between witness and Baldwin.

The plaintiffs gave evidence that after failing to get the lumber delivered by the defendants they had advertised extensively for teams to draw the lumber; that they had paid high prices for the hauling; that the roads had become so bad they had to repair them; that the delay put them into the inclement weather of the fall and winter; that they had to purchase other plank at an increased price, and had sold the plank delivered by Packard & Co. at Wilder's station, which the defendants should have transported at a reduced price, &c., with other evidence, for the purpose of showing the loss they had sustained by the failure by the defendants to deliver the plank.

Baldwin testified for the defendants that the siding at Wilder's was a private siding at which the defendants kept no agent; there was no special contract between witness and plaintiffs' agents; witness had said he would endeavor to move the plank, and gave instructions for the purpose.

During the trial the plaintiffs proposed to prove that on account of the delay caused by defendant in forwarding plank the plaintiffs were obliged to incur additional expense in regrading their roadbed several times.

Also they had to pay more for hauling the plank to the points of destination than if the plank had been transported by defendants, and also to pay more for labor in constructing the road, also loss on the lumber not transported.

Defendants objected to the offers for the reason they are not the proper measures of damages. They were admitted and a bill of exceptions sealed.

The defendants gave evidence also of a great accumulation of cars on the Oil Creek road, so that they could not transfer their lumber, and that this was the cause of delay in transporting lumber.

They proposed to prove by E. H. Wilder and others, that mills could have been erected and the lumber manufactured to the amount contracted by plaintiffs from Packard, Abel & Co., and delivered on the line of the Oil Creek road within the time and at the price specified in said contract.

This offer was rejected by the court and a bill of exceptions sealed.

The following are points of the defendants with the answers:—

2. The defendants as common carriers were not bound to receive freight on the line of their road except at the regular stations, and unless there was an agreement on their part to receive at Wilder's private siding a certain specified amount of freight, they could not be held for refusing so to do.

Answer. " To the 2d point we have given a sufficient answer in our general charge. It is true, except when some obligation arising from a contract, express or implied, to do so imposed on it the duty so to do."

4. The measure of damages is the difference between the price of lumber at Wilder's siding, the point on defendants' road from which it was to be transported and at Corry, at which place it was to be transferred to the Oil Creek road for Titusville, after deducting the cost of transportation.

Answer. " If the 4th point intends to assert that the difference in the value of lumber not moved at Wilder's siding and Corry is the only measure of damage in the case, we dissent from it. This is undoubtedly one element in estimating the damages. Other matters may be taken into the computation as explained in our general charge."

6. There is no evidence in the case of a special contract making the defendants liable beyond their ordinary obligations as common carriers.

Answer. " The 6th point is referred to the jury."

8. The evidence of the price of lumber at Titusville, the additional expense of hauling and delivering the plank on and along the plank road, and in laying the plank, and the additional cost of labor on the road, are not competent evidence to go to the jury in finding the amount of damages.

" This 8th point is answered in the negative."

The court in the charge, after giving a synopsis of the evidence of J. Holden, Hays and Coney, said:—

* * * " This is the direct evidence from which the plaintiffs ask you to say by your verdict that there was a contract by which the defendants, through their authorized agent, Mr. Baldwin, undertook and promised to furnish cars and transport their lumber in proper season from Wilder's siding and Lovell's station to Corry.

" To this they add the circumstantial evidence surrounding the case, namely, the fact that after each promise, there was a partial fulfilment. Cars came spasmodically, and then, without any notice or reason given, would cease. Cars to the number of seventy-seven were sent, and lumber to the amount of 435,000 feet was moved as desired.

[Pennsylvania Railroad Co. *v.* Titusville Plank Road Co.]

" Does this evidence satisfy you that a specific contract was made as claimed by the plaintiffs? All that was necessary to constitute it was a promise on the part of Baldwin to do what the plaintiffs requested. Such a promise as, if performed, would have been beneficial to the plaintiffs, and made in such a way as to justify the plaintiffs' agent in relying upon it as absolute and unconditional, except in the matter of inducing the Oil Creek Railroad to take the cars transferred without delay. If so, one principal difficulty in the case is disposed of. * * *

" It is the law, as claimed by the defendants, that the duty resting on it as a common carrier did not bind it to surmount every obstacle, and transport freight against existing impossibilities.

" Sudden emergencies and extraordinary disasters would excuse from a prompt execution of that duty.

" But as against a special contract to do a particular thing, these excuses would not be available. No blockade of its road, or crowd of other freight, would justify the breach of a special contract to forward and deliver freight at a specified time and place. Against such contingencies the party might have guarded in its contract. If that is not done, it must comply with its contract, or pay the damages for non-compliance. If then you believe there was such a contract as the plaintiffs allege—to run six carloads per day,—the defendants were bound to do it, and the question of blockade, &c., does not arise, and may be left out of view, unless you believe the obstacle or hindrance was one provided against in the contract, or which the plaintiffs were bound to remove."

The verdict was for the plaintiffs for $17,582.08. Their 3d and 6th assignments of error were the portions of the charge of the court above given, and the answer to the defendants' 6th point; the 5th assignment of error was the answer to the defendants' 4th point; the 10th assignment was to the rejection of the defendants' offer of evidence.

*J. R. Clark* and *J. Ross Thompson*, for plaintiffs in error, as to measure of damages, cited O'Conner *v.* Forster, 10 Watts 418; McGovern *v.* Lewis, 6 P. F. Smith 231; Fessler *v.* Love, 12 Wright 407; Adams's Express Co. *v.* Egbert, 12 Casey 360.

*F. B. Guthrie* and *J. Douglass* (with whom was *R. Brown*), for defendants in error.—Whether there was a special contract was for the jury: 2 Redfield on Railways 178; Angell on Carriers 269, pl. 294; Story on Bailments 545; Hand *v.* Baynes, 4 Whart. 204. As to the measure of damages: Collins *v.* Baumgardner, 2 P. F. Smith 461; Masterton *v.* Brooklyn, 7 Hill 61; Hoy *v.* Gronoble, 10 Casey 9.

[Pennsylvania Railroad Co. *v*. Titusville Plank Road Co.]

The opinion of the court was delivered, May 13th 1872, by

SHARSWOOD, J.—We think there was no evidence of a special contract which ought to have been submitted to the jury. The evidence consisted entirely of alleged admissions by Baldwin, the superintendent of the Pennsylvania Railroad, from which the jury were left to draw the inference that there had been a prior special contract. Nothing is better settled than that it could not be so found. The general rule on this subject is very clearly and succinctly stated by Mr. Justice Rogers in Hough *v*. Doyle, 4 Rawle 294. "When it is proved that one is the agent of another, whatever the agent does, or says or writes in the making of a contract, as agent, is admissible in evidence against the principal, because it is part of the contract which he made for his principal, and which therefore binds him, but it is not admissible as to the agent's account of what passes. For example, the declaration of a servant employed to sell a horse, is evidence to charge the master with warranty, if made at the time of the sale; if made at any other time the facts must be proved by the servant himself. The admissions of an agent, not made at the time of the transaction, but subsequently, are not evidence. Thus, the letters of an agent to his principal, containing a narrative of the transaction in which he had been employed, are not admissible in evidence against the principal." It would be a mere affectation of learning to cite the long array of cases from Hannay *v*. Stewart, 6 Watts 487, to Fawcett *v*. Bigley, 9 P. F. Smith 411, in which this rule has been reiterated and applied. The declarations in question were certainly admissible as those of an agent of a common carrier in the course of his employment as such, but not to prove a prior special contract. And indeed admitting that these declarations could be used for such purpose, the inference attempted to be drawn from them was a very strained one. This sustains the 1st, 3d and 6th assignments.

The next important question is, whether the ruling of the judge below as to the measure of damages was accurate. We need not consider how it would have been had there been a special contract. The undertaking of the railroad company and their duty as common carriers was to furnish cars and transport the lumber of the Plank Road Company from Wilder's siding and Lovell station to Corry. From there it was to be transported over the Oil Creek Railroad to Titusville. The duty of the Pennsylvania Railroad ended at Corry. What then ought to be the measure of damages on the failure of duty of the railroad company to transport to Corry? The rule is compensation; such damage as might reasonably have been anticipated, and within the view of the parties. The measure then would be as the court would seem in part to have admitted, "the difference between the price of lumber at Wilder's siding, the point on the railroad from which it was to be

transported, and at Corry, at which place it was to be transported to the Oil Creek road for Titusville, after deducting the cost of transportation." It is true, this rule must be received with the necessary qualification, that lumber of the kind required in sufficient quantities could be obtained at Corry, and that the common carrier must compensate for whatever delay might arise from his failure; but to say that the increased expense of labor in putting down the planks in consequence of such delay, would be such an immediate and proximate effect as ought to be charged to the common carriers, seems to be entirely too indefinite. It would include a rise of wages—stormy weather—bad roads in consequence—which would be entirely beyond what would naturally have been within the view of the parties, and might well have happened even had the railroad company punctually performed their duty. The natural consequences of delay and stoppage of work and payment of wages, and expenses arising therefrom, and the loss from not having the work finished at the time it otherwise would have been, form the rule.

We think that there was error in rejecting the offer to prove that portable mills could have been erected, and the lumber manufactured to the amount contracted by plaintiff from Packard, Abel & Co., and delivered on the line of the Oil Creek road within the time and at the price specified in said contract. It was certainly the duty of the plank road, when notified of the inability or refusal of the railroad to transport their lumber, to adopt every proper and feasible means of supplying themselves, and if they neglected to avail themselves of any such means, it certainly would form an element for the consideration of the jury in estimating the damages.

The other errors assigned are not sustained.

Judgment reversed, and *venire facias de novo* awarded.