F. P. Weaver Coal Co. *v.* Maryland Casualty Co., Appellant.

Argued January 8, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Joseph L. Ehrenreich,* with him *Wilbur F. Whittle,* for appellant.—Damage to which defendant can he held responsible must be sufficiently certain as to make any verdict for other than nominal damages rest on more than a mere guess: Bastian v. Glass Co., 281 Pa. 313; Osterling v. Frick, 284 Pa. 397.

The written contracts between plaintiff and the contractor and between plaintiff and defendant, are the only evidence of the arrangement between the parties: Gianni v. Russell & Co., 281 Pa. 320; Billmeyer Dill & Co. v. Wagner, 91 Pa. 92; Spiese v. Trust Co., 258 Pa. 422.

It has been held as late as Philadelphia v. Tripple, 230 Pa. 480, where a building contract provides a time limit, but the contractor after the expiration of the time limit, has been permitted to continue the work and receives payment therefor, the owner will be deemed to have waived the provision as to the time limit: Coryell v. Boro., 226 Pa. 103; Dravo Contracting Co. v. Reese & Sons Co., 291 Pa. 387; Brackin v. Engineering Co., 283 Pa. 91; Parish Mfg. Co. v. Martin Perry Corp., 293 Pa. 422.

*William Clarke Mason,* with him *John M. Clarke,* and *Morgan, Lewis & Bockius,* for appellee, cited: Pittsburgh Coal Co. v. Foster, 59 Pa. 365; Columbus Ry. & P. Co. v. Columbus, 249 U. S. 412.

OPINION BY MR. JUSTICE SCHAFFER, February 11, 1929:

This is a suit on a bond in which defendant was surety, given to secure the faithful performance of a contract to dismantle two large cranes and load them on cars for shipment to plaintiff at Montreal, Canada, to be used there, upon the opening of navigation in the St. Lawrence River, in the unloading of vessels carrying cargoes of coal. Recovery was had by plaintiff in the court below for the full amount of the bond, and defendant, the Maryland Casualty Company, appeals.

The cranes were part of the equipment of the Merchants Shipbuilding Company at Chester, Pennsylvania, and were purchased by plaintiff as they stood. It entered into a contract with Henderson & Brother, Inc., on February 20, 1924, in which the latter agreed to dismantle the two cranes and to have them loaded on cars ready for shipment from Chester to plaintiff at Montreal—the first one not later than March 5th and the second not later than March 19th. In the affidavit of defense it was conceded that in making the contract it was understood that plaintiff desired the cranes to be dismantled and shipped at the earliest pos-

sible moment and the testimony disclosed that the dates fixed in the agreement for shipment from Chester were named by Henderson & Brother as those upon which performance could and would be made by them.

Instead of shipping them on the dates agreed upon the first one was not completely loaded on the cars and started on its journey until March 17th, twelve days later than it was stipulated it should be, and the second not until April 7th, nineteen days later than the contract provided. The cranes could not be used by plaintiffs until both of them reached their destination and were erected, as the coal had to be unloaded simultaneously from bow and stern hatches. It was testified that working with all possible expedition it took sixty-seven days from the date of shipment of the last crane at Chester to unload, reassemble and erect it on plaintiff's dock in Montreal ready for use; indeed the testimony was that the sixty-seven days for the accomplishment of these steps was "a record time" and defendant offered no evidence to the contrary.

Plaintiff claims that because of the delay in the shipment of the cranes and the resulting loss of time in reërecting them, which occupied until June 13th, it suffered loss due to the increased cost placed upon it in unloading a cargo of coal which arrived on May 27th over the cost which would have been entailed had it been able to use the cranes in discharging the vessel; this additional expense was more than the amount of the bond, which was for $4,000.

The first position taken by appellant in its argument is that as the contract does not provide for any special purpose for which the work for Henderson & Brother, the contractors, was to be done, and there being further work to be done by plaintiff in assembling and erecting the cranes, with which latter work the contractor had nothing to do and from which further delay may have been occasioned, the damages now claimed were not within the contemplation of the parties when the contract

was entered into, and, second, that the agreement itself provides the remedy in case the contractor delays, by stipulating that in such event plaintiff may take charge of the work and provide the necessary labor and equipment to carry it on and deduct the cost thereof from the amount due the contractor. We are of opinion that this latter was one remedy available to plaintiff, but not the only redress it can avail itself of for failure to perform. As to whether the damages claimed were within the contemplation of the parties, Henderson & Brother knew what plaintiff's business was and what use it intended for the cranes and that further work would be required to reërect them; having this knowledge, they agreed on certain dates to have the cranes on the cars ready for shipment. They necessarily must have known that if they failed in performance plaintiff would be delayed in using the cranes, that, in fixing dates for their shipment, their availability for plaintiff's use at a definite future time necessarily must have been in plaintiff's view. Not having lived up to their undertaking, if plaintiff thereby suffered loss by the delay, the contractors and their surety must respond for it. This was the very purpose in giving the bond, to guarantee that the contractor would perform as agreed. If it did not, then the condition of the obligation to indemnify plaintiff "against any loss or damage directly arising by reason of the failure of the principal to faithfully perform said contract" became operative. There was loss to plaintiff which arose directly out of the failure of the contractor to faithfully perform its contract, and just the kind of loss that could be anticipated, caused by the use of some other instrumentality than the cranes to serve the purpose they were to fill. The situation before us is not controlled by the rule of "mere guess" damages (Bastian v. Marienville Glass Co., 281 Pa. 313). It can be concluded without question that the parties had in contemplation when they executed the contract and fixed specific dates for shipment of

the cranes that if shipment was delayed, plaintiff would have to substitute other and more expensive methods of unloading such ships as should arrive. The position assumed by appellant that the only damage contemplated was the additional cost of dismantling by another contractor is not tenable in view of the circumstances as they existed when the contract was made.

Plaintiff had an inspector on the work at Chester. It is said that he did not complain of the delay and from this it is argued that the time limit set in the contract for the shipment of the cranes had been extended by the conduct of the parties which amounted to a waiver of the stipulation. Mere failure to complain of the delay would not constitute a waiver. As a matter of fact, plaintiff on March 20th did complain of the delay in the shipment of the first crane and notified the contractor and defendant of damage being likely to ensue. It is true that a waiver may be implied as well as expressed (9 C. J. 788, par. 130), and where, under certain circumstances, after the time for the completion of the work, the owner assents to the continuance without objecting to the delay, he will be deemed to have waived the provision as to the time of performance (Ibid.; Pressy v. McCornack, 235 Pa. 443), but here plaintiff did object to the delay. Moreover, there must be something indicating acquiescence in the delay if a waiver is to be implied and here there was nothing. Merely that the inspector on the job did not complain is not enough; it may have been wise for him not to do so. "A party by allowing or requiring the party in default to complete performance does not by so doing waive his claim for damages for delay, there being no further showing that the time for performance has been extended": 13 C. J. 689, section 784.

The measure of damages here allowed is similar to that approved in Pittsburgh Coal Co. v. Foster, 59 Pa. 365, where a contractor had undertaken to build a locomotive and deliver it on a day certain. The plaintiff

intended to use the engine instead of horses as a means of transporting coal. There was delay beyond the date stipulated in delivering the locomotive. On the trial, to show its damages, plaintiff offered evidence of the difference between the cost of transportation by horses and by the engine for the period between which delivery was contracted for and the date of actual delivery. The trial court refused the evidence on the ground that it was too remote; reversing, it was said: "That the loss in this case was immediate and the necessary consequence of nonfulfillment, is obvious."

The assignments of error are all overruled.

Judgment affirmed.