**KRAUSS v. GREENBARG et al.**

No. 8184.

Circuit Court of Appeals, Third Circuit.

Argued March 19, 1943.

Decided July 16, 1943.

Rehearing Denied Sept. 20, 1943.

B. D. Oliensis, of Philadelphia, Pa. (Jacob K. Miller and Levi, Mandel & Miller, all of Philadelphia, Pa., on the brief), for appellant.

T. Ewing Montgomery, of Philadelphia, Pa., for appellees.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

On July 30, 1940, the defendants who used the business name of King Kard Overall Company, received an award and contract from the War Department of the United States to supply 698,084 pairs of leggings. The contract called for deliveries of certain quantities of leggings at stated intervals and provided for a sum as liquidated damages for each day of delay. By a memorandum of the same date the defendants placed an order with the plaintiff, whose business was carried on under the name of American Cord and Webbing Company, for the webbing to be used in making the leggings. The order provided for certain quantities of webbing to be delivered at given dates.

On March 11, 1941, the webbing company started suit in the Eastern District of Pennsylvania to recover $15,326.13 for the webbing sold and delivered to the overall company pursuant to the latter's order. The buyers admitted nonpayment but filed a counterclaim for $22,740.99. The jury returned a verdict in favor of the overall company for the counterclaim and judgment was entered for the difference less $2,000. (See footnote 3.) The webbing company filed this appeal.

The issues raised on this appeal concern the counterclaim. The theory of the counterclaim is that the webbing company did not maintain the scheduled deliveries of the webbing and as a result thereof the overall company could not meet its schedule with the Government. Because of this it incurred the per diem penalty provided for in the government contract for each day's delay in deliveries which amounted to $22,740.99. These special damages it seeks to charge to the webbing company. The latter admits that it failed to deliver the webbing as per schedule. It denies, however, liability on its part for the special damages sought.

The first question for us is to determine the law applicable to the controversy. The webbing company formally acknowledged the order by a letter sent from its New York office, all the prior negotiations having taken place in Philadelphia, where the overall company had its factory. We do not need to determine where the contract was consummated, however, for applying the Pennsylvania conflict of laws rule, as we must, Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, we find that the right to and measure of damages is governed by the law of the place of performance. See cases cited in Restatement, Conflict of Laws; Penna. Annot. (1936) §§ 372, 413. Here, the place of performance was at Philadelphia and the Pennsylvania rule of damages controls.

The rule governing special damages in contract cases applied in the Pennsylvania decisions has been that laid down in the leading English case of Hadley v. Baxendale, 9 Ex. 341 (1854). It is that special damages for breach of a contract are not recoverable unless they can fairly and reasonably be considered as arising naturally from the breach or as being within the contemplation of the parties, at the time the contract was made, as the probable result of the breach. See Fleming v. Beck, 1865, 48 Pa. 309; Wolf v. Studebaker, 1870, 65 Pa. 459; Billmeyer, Dill & Co. v. Wagner, 1879, 91 Pa. 92; Raby, Incorporated v. Ward-Meehan Company, 1918, 261 Pa. 468, 104 A. 750, all citing Hadley v. Baxendale.[1] Where the consequential damages claimed were within the contemplation of the parties at the time of the contracting

---

[1] Adams Express Company v. Egbert, 1860, 36 Pa. 360, 78 Am.Dec. 382, is the Pennsylvania equivalent of Hadley v. Baxendale. Apparently decided without reference to the English case which preceded it by 6 years, it anticipates its rule in making forseeability the criterion of recovery of special damages.

as the probable result of the breach, their recovery has been allowed. Pittsburg Coal Co. v. Foster, 1869, 59 Pa. 365; Wolstenholme, Inc., v. Jos. Randall & Bro., Inc., 1929, 295 Pa. 131, 144 A. 909; F. P. Weaver Coal Co. v. Maryland Casualty Co., 1929, 295 Pa. 486, 145 A. 595; Stevenson v. Smith, 1924, 82 Pa.Super. 539; Siegel v. Struble Brothers, Inc., 1942, 150 Pa. Super. 343, 28 A.2d 352. The question stressed as ultimately determinative in all these cases is whether at the time of making the contract the party who broke his promise knew that his breach would probably result in the kind of special damages claimed and thus could be said to have foreseen them. If he did, then he was liable for the consequential damages.

On this question in the case at bar we have a special finding by the jury. At the trial of the case the court submitted three questions to the jury. One asked whether Krauss [the webbing company] knew, at the time he made his contract with Greenbarg [the overall company], that the latter's contract with the Government provided that delay in delivery would subject it to a penalty. The jury answered yes. This finding, which is unassailed, establishes definitely that the webbing company knew and could have foreseen that if the webbing, which it undertook to furnish, was not delivered as scheduled in the contract and as a result the leggings could not be delivered on time, the overall company would incur the special damages it now claims.

■ The appellant makes the argument that mere contemplation of future harm is not sufficient to impose liability for that harm as special damages. There must have been virtually a tacit agreement to assume the risk of whatever harm was foreseeable. There is some judicial authority for this view in the highest court of this land. Globe Refining Company v. Landa Cotton Oil Company, 190 U.S. 540 (1903). There is likewise some support for the view in the native home of Hadley v. Baxendale. B. C. Saw-Mill Co. v. Nettleship, L.R. 3 C.P. 499 (1868); Horne v. The Midland Railway Company, L.R. 7 C.P. 583 (1872); L.R. 8 C.P. 131 (1873). The merits of this subsequent restriction on Hadley v. Baxendale have been argued at length. 5 Williston on Contracts (1937) § 1357; McCormick, The Contemplation Rule as a Limitation Upon Damages for Breach of Contract (1935) 19 Minn.L.Rev. 496, 511 et seq.; Bauer, Consequential Damages in Contract (1932) 80 U. of Pa.L.Rev. 687. However, as this Court has said many times since Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, our duty is to apply state law as we find it in the state decisions irrespective of what we may regard as its merits. Pennsylvania decisions have clearly held, we think, that knowledge of facts which makes special damages foreseeable imposes liability therefor.

■ The webbing company, as part of its argument as to foreseeable consequences, urges that it must be shown that the vendor knew at the time the contract was made that there was no available market where the vendee could procure the merchandise in event of a failure of performance by the vendor. As to this, there was some testimony that the webbing company, when in default for delay, gave assurances that it would procure the webbing for its customer. To that extent, "Consequences that might have been avoided may form the basis for recovery if the plaintiff's failure to avoid them was due to defendant's promises or representations." 5 Williston, supra, § 1353. Aside from this, however, is the vendor's failure to bring the point to the attention of the trial judge and through him to the jury if there was thought to be merit in it. The judge charged the jury fully, and as we have said above, correctly, regarding the rule of foreseeable consequences in recovery of special damages. He charged them also, and correctly, as to an injured party's duty in mitigating damages after breach, raising the question and leaving to them the answer, whether the buyers could have procured webbing elsewhere following the seller's default. The seller submitted certain requests for instructions to the jury, none of them mentioning the point under consideration. At the close of the charge he was given the opportunity to present further requests if he had any to make. If he wanted this specific point further elaborated this was his opportunity to ask for it. He may not raise it for the first time now. Federal Rules of Civil Procedure, rule 51, 28 U.S.C.A. following section 723c; Palmer v. Hoffman, 1943, 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. ——.

### Causation.

The webbing company asserted at the trial, and introduced evidence tending to

prove that its delay in furnishing webbing was not the sole cause for the overall company's delay in performance. It claimed as other contributing causes a landlord's distress and eviction at the buyers' factory, a removal by the overall company of its plant, a shortage of eyelets necessary to the manufacture of the leggings, and excessive delay by the manufacturer even after all the webbing had been delivered. Assigned as error, in view of this evidence, is the judge's charge to the jury that although there may have been other contributing causes, if the "primary" "real" "main" "chief" cause of the overall company's delay was the webbing company's failure to deliver on time, then the loss was chargeable to it. That delay, he charged, had "to be sufficient in itself to have delayed his [overall company's] contract with the Government." [2] It is contended that in order to charge the penalty to the webbing company, its failure to deliver on time had to be the sole cause of the damage claimed.[3]

We think the trial judge's charge was not open to attack by the appellant. One of the legal tests which must be met in order for something which is a cause in fact to be a "legal cause" is that it shall have been a substantial factor in bringing about the harm. As thus used substantial denotes "the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, * * *".[4] If a number of factors are operating one may so predominate in bringing about the harm as to make the effect produced by others so negligible that they cannot be considered substantial factors and hence legal causes of the harm produced. In that event liability attaches, the requisites of legal cause being shown, only to the one responsible for the predominating, or substantial, factor producing the harm.[5] The trial judge in charging the jury, required no less than this. As he himself says in the opinion on the motion for new trial, the charge in this respect may have been more favorable than the seller of the webbing was entitled to have. In any event, it is not open to attack by the latter.

## Avoidable Consequences

Finally, the webbing company argues that its opponent could have avoided the imposition of penalties and having failed to do so it cannot recover them as damages in this suit.

The webbing company did not itself manufacture the webbing it sold, but had ordered it from a mill. The cause of its inability to deliver, it says, was a breakdown of the weaving machinery at that mill and the inability of the mill to replace immediately the parts needed. This was communicated to the overall company. It is urged that under Article 17 of the government contract, the overall company could have procured an extension of time for its performance had it applied to the Government, and stated these facts. Article 17 of that contract provides: "That the contractor shall not be charged with liquidated damages or any excess cost when the delay in delivery is due to unforeseeable causes beyond the control and without the fault or negligence of the contractor, including, but not restricted to, acts of God or the public enemy, acts of the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, unusually severe weather, and delays of a subcontractor due to such causes * * *, if the contractor shall notify the contracting officer in writing of the cause of any such delay, within 10 days from the beginning thereof, * * *. The contracting officer shall then ascertain the facts and extent of the delay and extend the time for

---

[2] The jury specifically found that the penalty incurred by the manufacturer was a loss directly and naturally resulting, as above defined by the trial judge, from the webbing company's failure to deliver on time. The finding itself is not assailed.

[3] It is to be noted that counsel for the overall company agreed to remit $2,000 of the verdict for that portion of the penalty attributable to defective merchandise and late delivery during the two months period following the last delivery of webbing, allowing a reasonable time for using the webbing delivered.

[4] 2 Restatement, Torts (1934) § 431, comment a. This problem is the same in tort and contract, though liability for consequences of an act is often carried further in instances where the defendant's liability is based on a tortious act. See 15 Am.Jur., Damages (1938) § 18; Pennsylvania Railroad Company v. Aspell, 1854, 23 Pa. 147, 151, 62 Am.Dec. 323.

[5] See 2 Restatement, Torts (1934) §§ 431, 432, 433. The Pennsylvania cases are in accord. See Restatement, Torts; Penna.Annot. (1938) §§ 431, 432, 433.

making delivery when in his judgment the findings of fact justify such an extension, and his findings of fact thereon shall be final and conclusive on the parties hereto, subject only to appeal, within 30 days, by the contractor to the head of the department * * *, whose decision on such appeal as to the facts of delay and the extension of time for making delivery shall be final and conclusive on the parties hereto." Admittedly defendants failed to ask for an extension of time in writing. At the trial one of them testified that an application for an extension of time due to the foregoing circumstances would have been denied. The trial judge held that as a matter of law the cause of delay was not such as to entitle the overall company to an extension of time under Article 17 and that therefore the failure to request an extension of time was of no consequence. We think that this was a proper construction of the clause.

▮ The Pennsylvania decisions support the general rule that a party to a contract cannot recover for damages which he could have avoided by reasonable means. Pennsylvania Railroad Company v. Titusville & Pithole Plank Road Company, 1872, 71 Pa. 350; Henry Shenk Company v. Erie County, 1935, 319 Pa. 100, 178 A. 662. But one is not required to go through the motions of attempting to avoid damages when it is certain that they will prove of no avail. That was the case here.

Both federal court decisions and recent administrative rulings show what is required to bring one who has contracted with the Government within such a saving clause in a contract. In construing the applicability of a clause in a government contract similar to the one here, the Supreme Court has said that "the very essence of the promise of a contract to deliver articles is ability to procure or make them. * * * It would have no sense or incentive, no assurance of fulfillment, otherwise; and a delay resulting from the absence of such ability is not of the same kind enumerated in the contract—is not a cause extraneous to it and independent of the engagements and exertions of the parties." Carnegie Steel Company v. United States, 1916, 240 U.S. 156, 164–166, 36 S.Ct. 342, 60 L.Ed. 576. Accordingly it has been held that unexpected delays in performance of government contracts due to inexperience,[6] difficulty in securing materials,[7] inability to get priority ratings,[8] labor shortage,[9] and tire rationing[10] were not such causes under the standard excuse for delay clause as would excuse delay.[11]

▮ It seems clear in the light of these decisions that if a government contractor asked for an extension of time due to a breakdown of his machinery, not attributable to the causes specified or anything similar thereto, he could not obtain it because part of the ability to perform, which is the contractor's undertaking, is to have available machinery and replacement parts so that performance will not be delayed due to machinery breakdown. That is the very thing he undertakes to do when he agrees to perform within a given time. A fortiori he cannot be excused by way of an extension of time when the delay for such reasons is that of a subcontractor's vendor. The trial judge's instruction to the jury to this effect was correct.

The judgment of the District Court is affirmed.

[6] Carnegie Steel Company v. United States, supra.

[7] 1 Bull.J.A.G.A. 36, Jan.–June, 1942, digested CCH, War Law Service, Government Contracts, ¶ 29,082.

[8] Comptroller General's Decision B-22500, 21 Dec.Comp.Gen. 625 (1942).

[9] Comptroller General's Decision B-33352, April 2, 1943, digested CCH, War Law Service, Government Contracts, ¶ 29,112.

[10] Comptroller General's Decision B-30355, Dec. 22, 1942, digested CCH, War Law Service, Government Contracts, ¶ 29,095.

[11] See also Maxwell v. United States, 4 Cir., 1925, 3 F.2d 906, affirmed, 1926, 271 U.S. 674, 46 S.Ct. 487, 70 L.Ed. 1130.