**UNITED STATES of America, for the Use and Benefit, of BURTON MILL AND CABINET WORKS, Appellant,**

v.

**A. J. RIFE CONSTRUCTION COMPANY AND ASSOCIATES et al., Appellees.**

**No. 15432.**

United States Court of Appeals
Fifth Circuit.

June 30, 1955.

Rehearing Denied Aug. 5, 1955.

Henry Klepak, Dallas, Tex., for appellant.

Thomas R. Hartnett, III, Dallas, Tex., for appellee.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

Pursuant to 40 U.S.C.A. §§ 270–270d, this action was brought in the name of the United States for the use and benefit of Burton Mill and Cabinet Works, the materialman for certain millwork in buildings constructed at Carswell Air Force Base, against the prime contractor, A. J. Rife Construction Company and Associates, and the surety on its Miller Act bond, the Seaboard Surety Company. The subcontractor claimed it was due $2,956.12 of the agreed price of the materials contracted for, and $447.25 for extras on the project, making a total of $3,403.37. Defendants denied that any extras were furnished, and asserted that the subcontractor breached its contract by furnishing materials which did not meet specifications and were not suitable for the purpose supplied, alleging as damages therefor $3,000 for additional labor necessitated by the defective millwork, and $3,000 for liquidated damages which they claimed represented a fair proportion of the amount of $9,000 assessed by the Government against the prime contractor for 90 days' delay, claiming that 30 days of this delay was caused by the subcontractor's breach; so alleging, the prime contractor counterclaimed for $3,043.88, the difference between these damages and the $2,952.12 of the original contract price admittedly remaining unpaid.

The court, having tried the case without a jury, ordered entry of judgment for defendants on the plaintiff's claim and for the plaintiff on the counterclaim. The plaintiff's motion for a new trial was overruled, and this appeal followed. The appellant attacks the judgment on the ground that the uncontradicted evidence showed that it was entitled to recover and that the trial court erred in denying a new trial.

Since we believe that the trial court's findings of fact were clearly erroneous and must be set aside, and that the judgment must therefore be reversed, we shall consider only this question, as it is determinative of the outcome here.

The trial court orally found the facts to be as follows:

"I find as facts, Gentlemen, that this millwork was not properly done, and, that the defendant was required to make certain repairs in it after, and before its rejection by the United States Engineers' Inspectors. That this extra work that they had to do on these 355 cabinets, after such rejection, amounted to substantially, perhaps, a little more than the amount sued for here by the plaintiff.

"But, I find that the cross action [sic] of the defendant for an additional amount of recovery has no satisfactory proof of the amount, and that, therefore, judgment must go for the defendant upon the original suit, wherein the plaintiff seeks $3,403.37; and, against the defendant on its cross action."

The judgment was phrased somewhat differently:

" * * * the Court having considered the pleadings, having heard the evidence and argument of counsel, was of the opinion that the facts were with the Defendants on Plaintiff's action and that the facts were with the Plaintiff on the Cross-Action [sic] of the Defendants; * *."

Neither brief on this appeal contains any citations of legal authority, and as we see it, the only serious question raised is whether, in the light of the evidence, the findings of fact were not clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. We have

found it necessary to examine the record with more care than is usually necessary, because the statements in the briefs of what the evidence showed are so completely different that one might almost think they pertained to different cases; and it is appropriate to discuss the evidence as we find it in the record, at some length.

The evidence is clear that on December 18, 1955, the prime contractor sent the following notice, captioned "Back Charge" to the subcontractor; we have for convenience numbered the items:

"Back Charge

"Date 12-18-53

"A. J. Rife Construction Co.
Dallas, Texas
To: Burton Mill & Cabinet Works
514 Bonham Street
Grand Prairie, Texas
Job: Airmens Dormitories
Carswell Air Force Base

"Description

"Reworking Millwork, prior to 10-1-53:

| | | |
|---|---|---:|
| [1] | Fitting doors and drawers on 355 bed room cabinets; 2 hrs each: 710 hrs Carpt. at 2.50 ...... | $1,775.00 |
| [2] | Rebuild 5 store Room Shelves; 8 hrs each; 40 hrs Carpt. at 2.50 ............................. | 100.00 |
| [3] | Repair 15 Lounge Cabinets; 4 hrs each; 60 hrs Carpt. at 2.50 ............................. | 150.00 |
| [4] | Rework Millwork in October, 1953, per attached statement ............................. | 640.00 |
| [5] | Wm. Cameron & Co. Invoice 10-21-53 (attached) .... | 5.90 |
| [6] | 10-28-53 (attached) .... | 9.28 |
| [7] | 11-5 -53 (attached) .... | 9.44 |
| | | 2,689.62 |
| [8] | Insurance and Taxes (10% of Labor) ......... | 266.50 |
| | "Total ............................. | 2,956.12 |

"A. J. Rife Construction Co.
"By /s/ Gilbert (Illegible)   *  *  *"

It is admitted in the pleadings that the prime contractor, asserting a right to recoup the amount of this "back charge," withheld $2,956.12 of the amount which it was to pay the subcontractor according to the terms of their contract. There was evidence also that millwork of the value of $447.25, in addition to that which was to be furnished under the contract, was delivered to the prime contractor at the request of his agent and accepted. These two amounts combined made up the subcontractor's claim of $3,403.37. From the judgment it would seem that the court found that no extras were actually delivered on request as the appellant claimed, but no express finding was made on this point.

The counterclaim sought not only to recoup the items listed in the back charge, but also to recover from the subcontractor $3,000 damages for breach of contract, claiming that these damages had been suffered by reason of an assessment of liquidated damages against the prime contractor by the Government, for delay in completing the prime contract.

■ With respect to some of the items of the counterclaim, the appellees introduced very little if any evidence. The back charge document itself was introduced into evidence with no objection by appellant. That self-serving statement would of course not have been admissible to prove the items of damage, if it had been objected to as hearsay; it was clearly not an entry in the regular course of business under 28 U.S.C.A. § 1732. And yet appellees relied solely upon this document and the following testimony of A. J. Rife, president of the prime contractor, to prove items 5 through 8 of the back charge, totalling $291.12:

"Q. And did you have to pay carpenters to fix it all up? A. Yes, sir, I had to have carpenters to correct these defects in order to get the government to accept them.

"Q. And is that what represents this back charge here? A. Yes, sir, just as accurately as possible."

■ We do not think this constitutes sufficient proof to sustain a finding that items 5 through 8 were damages actually incurred by reason of the subcontractor's breach of contract. The document has some probative value to show that the prime contractor asserted a right to recoupment, but we think that the document is so vague and indefinite with respect to the relevancy and method of computation of items 5 through 8 that it cannot be a proper basis to find that the prime contractor was entitled to recoup those items. Likewise, Rife's testimony was simply his legal conclusion that the back charge was a correct computation of the recoupment, and was properly speaking not evidence at all.

On the other hand, there was ample evidence that items 1 through 4 of the back charge could be recouped. Appellant argues that the proof was deficient as to the hourly wage relative to items 2 and 3, and contradictory as to the number of hours under item 1; however, the record clearly supports these claims.[1]

■■ As for the $3,000 claimed by the prime contractor as that part of the $9,000 liquidated damages attributable to the subcontractor's breach, we do not doubt that in an appropriate case the law imposes liability for damages of this nature. In Krauss v. Greenbarg, 3 Cir., 137 F.2d 569, certiorari denied 320 U.S. 791, 64 S.Ct. 207, 88 L.Ed. 477, the precise question was raised. In a studied and well-reasoned opinion by Judge Goodrich it was held that as a matter of Pennsylvania law and under the circumstances there present, the prime contractor on an Army legging contract should recover the liquidated damages assessed against him by the Government for delayed performance, from his webbing subcontractor who was in default. However, the proof introduced in the present case was not sufficient to support a recovery for this item of damages. In the Krauss case, there was evidence from which the jury specially found that the subcontractor knew there was a liquidated damages clause in the prime contract when the subcontract was made; and there was evidence that the subcontract contained a schedule of deliveries, that the subcontractor failed to meet this schedule, and that this was the sole cause of the delay in the prime contractor's performance. Here, there was no proof that the subcontractor knew of the clause; there was no delivery date specified in the written subcontract nor any

---

1. Emmett Winn, carpenter foreman for the prime contractor, testified that "all of those hours" were at $2.50 an hour, and did not contradict himself as to the hours spent on the bedroom cabinets. He said quite consistently that 710 man-hours were consumed prior to the Government rejection in September, 1953 (item 1 of the back charge) and 256 additional hours in October, to make these cabinets acceptable to the inspectors (item 4 of the back charge). To be sure, it is evident that the largest item was an across-the-board estimate as to the cost of fitting each of the 355 cabinets, and also it is unsatisfactory that the questioning about the October time included a reference to painting time, but this was a matter for cross-examination by appellant.

proof of what a reasonable time would be; the delay was found to be the result of defective millwork, not the failure to meet a specified delivery date; and the proof showed that there were other causes which contributed to the 90 days' delay. The proof in the present record is clearly inadequate to support any recovery on this item.[2]

In the light of the evidence, it is difficult to understand what the court could have meant by its findings of fact. It found "That this extra work that they had to do on these 355 cabinets, after such rejection, amounted to substantially, perhaps a little more than the amount sued for here by the plaintiff." Taken literally, this appears to mean that item 4 of the back charge, which the evidence showed was $640.00 for work done after rejection, is as much or more than the $3,403.37 claimed, which is of course impossible. But, assuming the court meant (as seems more likely) that the items of the back charge equalled the subcontractor's claim for the remainder of the contract amount, and that these claims cancelled each other, we think this finding would be clearly erroneous because the evidence was insufficient with respect to items 5 through 8 of the back charge.

Furthermore, the failure of the court to make a finding of fact as to the extras alleged to have been furnished enlarges the area of uncertainty as to the court's final conclusion. The receipt of the items listed as extras was admitted, and some of them appear by comparing the bid with the invoices to be something other than items contracted for.

The judgment also must not have said what was really in the court's mind. It recites that the court "was of the opinion that the facts were with the Defendants on Plaintiff's action and that the facts were with the Plaintiff on the Cross-Action of the Defendants." However, the facts could not be with the defendants on the main action, since they formally admitted in their answer that $2,956.12 of the contract amount had not been paid. And thus some part of the counterclaim, which part we cannot tell, had to have been proved to offset this claim. In short, we think that the evidence cannot be reconciled in sound reason with the findings made and the result reached; that the findings of fact are clearly erroneous and do not support the judgment.

We must therefore reverse the judgment and remand the case for a new trial.

Reversed and remanded for a new trial.

2. See in addition to the authorities cited in the Krauss case, supra, "Developments in the Law-Damages," 61 Harv. L.Rev. 113; Fuller and Perdue, "The Reliance Interest in Contract Damages," 46 Yale L.J. 52, 373.