**UNITED STATES of America,**
**Plaintiff,**

v.

**Anthony J. BATOR, Defendant.**

Civ. A. No. 895–54.

United States District Court
D. New Jersey.

June 4, 1956.

Raymond Del Tufo, Jr., by Charles Hoens, Jr., Newark, for plaintiff.

Rosen & Kanov, by Leon Rosen, Jersey City, for defendant.

WORTENDYKE, District Judge.

This is a suit to recover monies alleged to be due the Government by way of refund under the terms of an employment contract between the defendant and the Civil Aeronautics Administration of the Department of Commerce. The defendant counterclaims for salary which he claims is due and owing to him under the same contract.

The facts as I find them are these:

The defendant applied to the C.A.A. for employment as an aircraft communicator in the Territory of Alaska. The defendant's application was accepted, and he was assigned to the C.A.A. Center at Oklahoma City, Oklahoma, for a training program of approximately ten weeks. The Government bore the cost of training and subsistence during this ten-week period as well as the cost of transportation to Summit, Alaska, where the defendant was subsequently stationed. When his application for employment was accepted on February 26, 1951, the defendant entered into a contract which provides in part:

"Now, Therefore, *the Applicant,* for and in consideration of his employment and training by the Government, *agrees to remain in the employ of the Government in the position of Aircraft Communicator for at least one year unless prevented from doing so by circumstances beyond his control.*" (Emphasis supplied.)

At the same time the defendant acknowledged a list of "Standard Conditions of Employment Outside the Continental United States." One of the conditions reads as follows:

"Your travel and transportation expenses to your post of duty outside the continental United States will be paid by the Civil Aeronautics Administration. However, if you are a new appointee and do not remain in service with the Civil Aero-

nautics Administration *in Alaska* for a minimum period of one year, the travel and transportation costs will be considered as a debt due by you to the United States and will be deducted from your wages or obtained through other legal process. *This provision does not apply if you are separated from the Federal service before the expiration of the one year period for reasons beyond your control; * * * "* (Latter emphasis supplied.)

The defendant completed training as an aircraft communicator and arrived in Summit, Alaska, on May 23, 1951. In November of that year the defendant submitted the following resignation:

"For reasons that I consider personal please accept this letter as my written statement of resignation. It is with great disappointment that I am no longer able to remain at this station. I therefore request that if any settlement is deemed necessary on transportation costs provided me by the United States Government that the Regional Administrator so decide a refund that would be considered a fair and just settlement in view of services rendered. This resignation is effective February 2, 1952."

In December, 1951 the defendant was reminded that he had agreed to remain in Alaska as an aircraft communicator for one year and that if he resigned before May 23, 1952 he would owe the Government travel and transportation costs from Oklahoma City to Summit, Alaska. The defendant was given thirty days to indicate whether he wished to extend the date of his resignation. The defendant replied that he wished his resignation to become effective as originally submitted.

The defendant left his employment at a time when he had salary due him of $326.14. This amount the Government applied against a claimed indebtedness of $878.42 for transportation from Oklahoma to Alaska, billing the defendant for the balance of $552.28.

During 1952 the defendant consulted counsel, and thereafter on two occasions letters were written to the C.A.A., elaborating upon the grounds which the defendant cited in resigning, to wit, "reasons that I consider personal." In the first letter, the explanation given was that "he was forced to cancel his employment agreement due to the fact that he suffered serious nervous and mental ailments because of his employment." The second explanation was similar: "The personal reasons were the fact that he was suffering from nervous and mental illness due to the strain of this type of employment. At the time he did not have the advantage of independent advice and he was of the belief that it was to his disadvantage to have appear on the record that he was suffering from a nervous and mental ailment."

The defendant never paid the Government the sum of $552.28 and consequently this action was commenced. The defendant set up several defenses which, in substance, amount to a contention that his separation from employment before the expiration of one year was brought about by "circumstances beyond his control" in that (1) he was forced to associate with individuals who endeavored to persuade him to engage in homosexual acts, and (2) he suffered serious nervous and mental ailments.

The defendant was the only witness who testified at the trial, and his testimony was confined to living conditions to which he was subjected while at the radio station at Summit, Alaska.

There were in all between 20 and 25 persons assigned to the radio station. The great majority of these persons were construction or maintenance personnel. The only women at the station were the wives of four men and they were billeted with their husbands. The defendant was assigned to a billet with two other communicators, and he lived with them for a period of about three or four months. Thereafter, upon a change in personnel, defendant was assigned to a different billet with one other communicator. About one and a half or two

months later a third Government employee was assigned to the same billet. This third person made a proposition to the defendant to engage in homosexual acts, which the defendant says he emphatically rejected. He testified that although each of the three men in this billet had a separate room, he kept a rifle ready at hand to repel any further similar approaches. His request for transfer to another billet on the ground that he would prefer to be assigned to a billet by himself or with other persons was not immediately granted, and he continued to reside in the same quarters for a period of three months. During this time the third occupant on one or two other occasions made remarks repulsive to the defendant. The defendant never took any direct action against this third person whom he charges with having made indecent proposals, nor did he ever discuss the matter with any other person at the station. It was soon after this third person was assigned to his billet that the defendant submitted his resignation. He was advised that it would take some time to process the resignation, and, therefore, he requested that it become effective on February 2, 1952.

When the person offensive to the defendant left the station, a reassignment of billets was made and the defendant was given a billet to himself. This lasted only for a short time, after which he was assigned to another billet with five men, some of whom engaged in much drinking, and one of whom, according to the defendant, also made an indecent proposal to him. Without stating that this occurrence was the reason, the defendant announced to the station manager that he was leaving the station the next day, which he did.

Not only did the defendant, a physically vigorous and well-developed man who previously served in the United States Navy, take no action against the makers of the improper suggestions, but he admitted that he never informed the station manager or the personnel at Anchorage, Alaska, with whom he subsequently discussed his departure, that the indecent approaches were the reason for the abandonment of his post. Moreover, the defendant testified that it was not until after he had been served with the summons in this action that he even informed his attorney, whom he had been consulting for over two years respecting the Government's claim, that the phrase "for reasons I consider personal" in his letter of resignation referred to the incident of the first indecent proposal made to him.

At no time has the defendant ever sought medical advice for any nervous or mental ailment. The only symptom that the defendant cited as a consequence of his being stationed in Summit, Alaska, was a loss of weight of 40 pounds, which weight he apparently regained upon his return to the United States.

■■ The sole issue in this case is whether the defendant was separated from, or prevented from remaining in his employment in Alaska by circumstances beyond his control. That an individual or individuals at the post to which defendant was assigned made offensive remarks and otherwise irritated the sensibilities of the defendant does not constitute circumstances beyond the defendant's control as that language is used in the contract and conditions of employment cited above. These circumstances were mere unforeseen difficulties which arose in the course of the performance of the defendant's contract. The defendant made no effort whatsoever to remove these difficulties as he might have by raising them with his employer. As said in Jonesboro Compress Co. v. Mente & Co., 8 Cir., 1934, 72 F.2d 3, 5:

> "'It is a well-settled rule of law, that if a party by his contract charge himself with an obligation possible to be performed, he must make it good, unless its performance is rendered impossible by the act of God, the law, or the other party. Unforeseen difficulties, however great, will not excuse him.'"

An undisclosed personal aversion to physical surroundings and fellow employees under the circumstances here involved certainly does not meet the contractual criterion of conditions beyond the defendant's control. And the evidence will not support a conclusion that the circumstances caused the defendant to suffer a mental ailment which might satisfy that criterion.

I hold, therefore, that defendant's resignation and departure from his post within the minimum period for which he agreed to serve was voluntary on his part and that he was not prevented from completing his minimum period of employment by "circumstances beyond his control."

Upon the basis of the foregoing facts and conclusions of law, the Government is entitled to recover from the defendant the sum of $552.28, together with interest thereon at 6% per annum from September 24, 1953, which I compute at $89.24 (to June 4, 1956), or a total amount of $641.52. An appropriate order may be submitted.